**TRAUMA SERVICE GROUP,
Plaintiff–Appellant,**

**v.**

**The UNITED STATES, Defendant–
Appellee.**

**No. 95–5129.**

United States Court of Appeals,
Federal Circuit.

Jan. 16, 1997.

Ruth E. Ganister, Rosenthal & Ganister, West Chester, PA, argued, for plaintiff-appellant. Of counsel was Glenn L. Blackwell.

Sharon Y. Eubanks, Deputy Director, Commercial Litigation Branch, Civil Division, Department of Justice, Washington, DC, argued, for defendant-appellee. On the brief were Frank W. Hunger, Assistant Attorney General, David M. Cohen, Director, Jeanne A. Davidson, Assistant Director, and Mary L. Smith, Attorney. Of counsel was R. Alan Miller, Attorney.

Before ARCHER, Chief Judge, MICHEL, and RADER, Circuit Judges.

RADER, Circuit Judge.

Trauma Service Group (TSG) appeals the United States Court of Federal Claims' decision to dismiss its complaint without prejudice. *Trauma Service Group, Ltd. v. United States*, 33 Fed.Cl. 426 (1995). Defendant, the United States, moved to dismiss plaintiff's complaint for lack of subject matter jurisdiction, RCFC 12(b)(1), for failure to state a claim, RCFC 12(b)(4), or, in the alternative, for summary judgment. Because the trial court properly granted the motion to dismiss under RCFC 12(b)(4), this court affirms.

## BACKGROUND

The Dependents' Medical Care Act, now codified as 10 U.S.C. §§ 1071–1106 (1994), grants health care benefits to certain dependents of members of the uniformed services and to certain retired members of these services. The Civilian Health and Medical Program of the Uniformed Services (CHAMPUS), a field agency of the Department of Defense, administers this program. *See* 10 U.S.C. § 1072(4).

To facilitate "delivery of health care [under the 1956 Act] ... in a more effective, efficient, or economical manner," 10 U.S.C. § 1096(a) (1994), military treatment facility (MTF) commanders may enter into partnership agreements between MTFs and civilian health care providers. These partnership agreements provide the use of Government facilities to civilian medical specialists. This arrangement saves the Government the expense of reimbursement for treatment in expensive civilian medical facilities. This additional expense would otherwise be billed to CHAMPUS. *See* 32 C.F.R. § 199.1(p)(1)(ii) (1996).

In April 1990, TSG submitted a proposal to participate in the Military–Civilian Health Services Partnership Program at Winn Army Community Hospital (WACH), Fort Stewart, Georgia. On August 20, 1990, TSG and WACH entered into a Memorandum of Agreement (MOA) for the sharing of medical resources. The stated purpose for this MOA was "to integrate specific WACH and CHAMPUS program resources to provide

Primary Care/Pediatrics services for CHAMPUS beneficiaries."

The MOA established general relations and procedures between TSG and WACH in Section B. The Commander of WACH agreed to provide facilities for the proper care of patients and to encourage CHAMPUS beneficiaries to use TSG's services rather than other CHAMPUS providers' services. TSG agreed to abide by hospital, Department of Defense, and Military Department regulations; to use available Army resources; and to adhere to CHAMPUS Health Care Provider Agreement requirements. In section C, entitled "Other Considerations," the MOA provided:

> 6. The participating health care entity shall provide the following to support this effort:
>
> (a) Two physicians, one RN, one LPN, one appointment clerk/receptionist, one billing clerk, Xerox machine, and office supplies during duty hours.
>
> (b) Three physicians, one each RN, LPN, nursing assistant, appointment clerk/receptionist, billing clerk, pharmacy technician, lab technician, x-ray technician, a Xerox machine, and office supplies during off duty times, weekends and holidays.

This MOA lasted until September 30, 1992. On June 30, 1992, TSG and WACH entered into a new Memorandum of Understanding (MOU) to extend TSG's services through September 30, 1994.[1] However, on December 8, 1993, Dr. Joseph Nowaslawski, President of TSG, sent a letter to Joseph Windham, Chief of Coordinated Care at WACH, specifying that TSG would terminate all services on March 8, 1994. TSG stopped providing services under the MOA on the date specified. On March 10, 1994, Dr. Nowaslawski sent a letter to Colonel Daniel Perugini, Commanding Officer of WACH. Dr. Nowaslawski sought reimbursement for the salary of an x-ray technician, Diana P. Willoughby, for the years 1990 through 1993 in the amount of $95,816.71.

TSG alleges that the Government, in contravention of the MOA, demanded that TSG provide an x-ray technician solely for support of Government in-patient services. TSG further alleges that the Government threatened to terminate the MOA if TSG did not comply. TSG thus provided an x-ray technician in support of non-CHAMPUS in-patient services. TSG seeks reimbursement for the Government's use of the x-ray technician.

## DISCUSSION

██ The Court of Federal Claims based its decision to dismiss the complaint on both lack of subject matter jurisdiction, under RCFC 12(b)(1), and on failure to state a claim, under RCFC 12(b)(4). To affirm the trial court, this court need only find sufficient justification for one of these grounds. *See Fromson v. Advance Offset Plate, Inc.,* 755 F.2d 1549, 1556 (Fed.Cir.1985) ("[T]his court reviews judgments, not opinions."). Because the trial court's dismissal for lack of subject matter jurisdiction and for failure to state a claim are both questions of law, this court reviews this matter without deference. *Wheeler v. United States,* 11 F.3d 156, 158 (Fed.Cir.1993) (citing *Dehne v. United States,* 970 F.2d 890, 892 (Fed.Cir.1992)).

### *Dismissal for Lack of Subject Matter Jurisdiction*

██ The Tucker Act supplies the Court of Federal Claims with jurisdiction for claims against the United States founded upon the Constitution, an Act of Congress, a regulation of an executive department, or an express or implied contract. 28 U.S.C. § 1491(a)(1) (1994); *Gould v. United States,* 67 F.3d 925, 928 (Fed.Cir.1995). The party invoking jurisdiction has the burden to show compliance with the Tucker Act. *See Reynolds v. Army & Air Force Exch. Serv.,* 846 F.2d 746, 748 (Fed.Cir.1988). TSG bases its allegations solely on a contract theory. Jurisdiction based on contract "extends only to contracts either express or implied in fact, and not to claims on contracts implied in law." *Hercules, Inc. v. United States,* ——

---

**1.** The MOA is alternatively referred to as a Memorandum of Understanding (MOU). For clarity, both the Memorandum of Agreement, executed on August 20, 1990, and the Memorandum of Understanding (MOU), executed on June 30, 1992, will be referred to as "MOAs."

U.S. ——, ——, 116 S.Ct. 981, 985, 134 L.Ed.2d 47 (1996).

■ To show jurisdiction in the Court of Federal Claims, TSG must show that either an express or implied-in-fact contract underlies its claim. A well-pleaded allegation in the complaint is sufficient to overcome challenges to jurisdiction. *Spruill v. Merit Sys. Protection Bd.*, 978 F.2d 679, 686 (Fed.Cir. 1992). TSG's complaint alleges that an express and, in the alternative, an implied-in-fact contract underlies its claim. This allegation suffices to confer subject matter jurisdiction in the Court of Federal Claims. *See Gould*, 67 F.3d at 929; *see also Do-Well Mach. Shop, Inc. v. United States*, 870 F.2d 637, 639–40 (Fed.Cir.1989) ("Jurisdiction, therefore, is not defeated … by the possibility that the averments might fail to state a cause of action on which petitioners could actually recover.") (quoting *Bell v. Hood*, 327 U.S. 678, 682, 66 S.Ct. 773, 776, 90 L.Ed. 939 (1946)). This court next turns to dismissal for failure to state a claim upon which relief can be granted.

### Dismissal for Failure to State a Claim

In evaluating a RCFC 12(b)(4) motion, this court construes unchallenged allegations in the complaint in favor of the pleader. *Hamlet v. United States*, 873 F.2d 1414, 1416 (Fed.Cir.1989). Further, a court may not dismiss unless the plaintiff can prove no set of facts which would entitle him to relief. *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957); *Hamlet*, 873 F.2d at 1416. To state a claim upon which relief can be granted, TSG must allege either an express or an implied-in-fact contract, and the breach of that contract. TSG does not show either.

■ In the absence of factual disputes, the question of contract formation is a question of law, reviewable *de novo. See Mahboob v. Department of Navy*, 928 F.2d 1126, 1128 (Fed.Cir.1991); *Ransom v. United States*, 900 F.2d 242, 244 (Fed.Cir.1990). The question of whether a contract creates a duty is also a question of law. *San Carlos Irrigation & Drainage Dist. v. United States*, 877 F.2d 957, 959–60 (Fed.Cir.1989).

■ The general requirements for a binding contract with the United States are identical for both express and implied contracts. *See, e.g., Russell Corp. v. United States*, 210 Ct.Cl. 596, 537 F.2d 474, 482 (1976); *Thermalon Indus. v. United States*, 34 Fed.Cl. 411, 414 (1995). The party alleging a contract must show a mutual intent to contract including an offer, an acceptance, and consideration. *City of El Centro v. United States*, 922 F.2d 816, 820 (Fed.Cir. 1990); *see also Thermalon*, 34 Fed.Cl. at 414; *Fincke v. United States*, 230 Ct.Cl. 233, 675 F.2d 289, 295 (1982). A contract with the United States also requires that the Government representative who entered or ratified the agreement had actual authority to bind the United States. *City of El Centro*, 922 F.2d at 820. Anyone entering into an agreement with the Government takes the risk of accurately ascertaining the authority of the agents who purport to act for the Government, and this risk remains with the contractor even when the Government agents themselves may have been unaware of the limitations on their authority. *Id.; Federal Crop Ins. Corp. v. Merrill*, 332 U.S. 380, 384, 68 S.Ct. 1, 3, 92 L.Ed. 10 (1947).

■ First, TSG contends that the MOA is an express contract obligating the payment of the X-ray technician's salary. To prevail, TSG must allege facts showing both the formation of an express contract and its breach. Turning first to the second inquiry, a breach of contract is a failure to perform a contractual duty when it is due. *Winstar Corp. v. United States*, 64 F.3d 1531, 1545 (Fed.Cir. 1995), *aff'd* —— U.S. ——, 116 S.Ct. 2432, 135 L.Ed.2d 964 (1996); *Restatement (Second) of Contracts* § 235(2) (1981). TSG does not allege any contractual duty which the defendant failed to perform.

TSG admits that the MOA contains no provision for reimbursement of salary for an x-ray technician, with the possible exception of B(1)(f):

> Provide appropriate reimbursement, subject to availability of funds and approval of the hospital Commander, for care rendered in the MTF to patients not eligible for CHAMPUS benefits as outlined in

MEDDAC Regulation 40–3 and by the Chief, Resource Management Division.

However, TSG has not shown that this provision includes care rendered by the x-ray technician. Pursuant to 32 C.F.R. § 199.1: "Charges allowed for professional services provided under the Partnership Program may include costs of support personnel, equipment, and supplies when *specifically outlined* in the partnership agreement." 32 C.F.R. § 199.1(p)(5) (1996) (emphasis added). The MOA contains no provision which specifically allows reimbursement of the cost of support personnel, including x-ray technicians. Because the MOA does not contain a requirement for reimbursement of support personnel, these costs do not fall within the "care" reimbursable under B(1)(f).

Because the only provision which TSG invokes for reimbursement does not apply to the services of the x-ray technician, the MOA does not require such reimbursement. Indeed, TSG appears to agree with this conclusion by stating at least twice in its complaint that the provision of an x-ray technician was entirely beyond the scope of the MOA. Thus, as the MOA did not create a duty to pay the salary of the x-ray technician, WACH did not breach the MOA.

■■■ Without a breach, this court need not reach the question of whether the MOA is a valid contract. However, any agreement can be a contract within the meaning of the Tucker Act, provided that it meets the requirements for a contract with the Government, specifically: mutual intent to contract including an offer and acceptance, consideration, and a Government representative who had actual authority to bind the Government. *See City of El Centro,* 922 F.2d at 820; *Thermalon,* 34 Fed.Cl. at 414. As such, contrary to the opinion of the trial court, a MOA can also be a contract—whether this one is, we do not decide.

■■■ In the alternative, TSG contends that it entered an implied-in-fact contract, beyond the scope of the MOA, for provision of an x-ray technician. An implied-in-fact agreement must be "founded upon a meeting of the minds, which, although not embodied in an express contract, is inferred, as a fact, from conduct of the parties showing, in the light of the surrounding circumstances, their tacit understanding." *Hercules,* —— U.S. at ——, 116 S.Ct. at 986 (quoting *Baltimore & Ohio R.R. Co. v. United States,* 261 U.S. 592, 597, 43 S.Ct. 425, 426–27, 67 L.Ed. 816 (1923)). For contracts with the United States, however, an implied-in-fact contract—just as an express contract—requires an authorized agent of the Government. *See City of El Centro,* 922 F.2d at 820. Further, an implied-in-fact contract cannot exist if an express contract already covers the same subject matter. *See Atlas Corp. v. United States,* 895 F.2d 745, 754–55 (Fed.Cir.1990); *see also Reforestacion de Sarapiqui v. United States,* 26 Cl.Ct. 177, 190 (1992).

Because an implied-in-fact contract cannot cover the same subject as an express contract, this court looks first to whether the MOA covers, as the Government strongly suggests it does, the provision of an x-ray technician. While the TSG physicians were to provide services solely to CHAMPUS patients, there was not such a restriction on the support personnel. During negotiation of the Partnership Agreement, TSG proposed that "[the support personnel] will work side by side with the military and process any and all requirements made of them." Further, the Internal Partnership Agreement Justification, submitted with the MOA to CHAMPUS, and Justification for Renewal of an Internal Partnership Agreement, submitted with the renewed MOU, both require that the x-ray technician and other support personnel be full-time equivalent employees.[2] As noted earlier, the MOA did not contain any provision for reimbursement for support services.

Construing the record and the contract language together suggests that the parties intended that these support personnel fulfill both CHAMPUS and in-patient needs. This requirement to "process any and all requirements made of them" should also include the

---

2. These documents refer to support personnel as "FTE." In this context, "FTE" can mean either full-time employee or full-time equivalent. *Acro-* *nyms, Initialisms and Abbreviations Dictionary* (12th ed.1996).

requirement for support personnel to provide solely in-patient care. In the absence of a contract provision for payment of these support personnel, the parties apparently agree that CHAMPUS reimbursement would adequately cover the expenses to TSG of these full-time employees. Thus, the parties' agreements accommodate the use of an x-ray technician for in-patient care.

■ However, even if TSG could show that the use of the X-ray technician was outside the scope of the agreement, the mere receipt of such services, even to the benefit of the Government, would not create an implied-in-fact contract to pay for them. *See Merritt v. United States*, 267 U.S. 338, 340–41, 45 S.Ct. 278, 279, 69 L.Ed. 643 (1925). Such implied-in-law contract scenarios are beyond the purview of the Tucker Act. *Hercules,* —— U.S. at ——, 116 S.Ct. at 989 ("But in any event we are constrained by our limited jurisdiction and may not entertain claims 'based merely on equitable considerations.'") (quoting *United States v. Minnesota Mut. Inv. Co.,* 271 U.S. 212, 217–18, 46 S.Ct. 501, 502–03, 70 L.Ed. 911 (1926)); *Merritt,* 267 U.S. at 340–41, 45 S.Ct. at 279.

Assuming the use of the x-ray technician was outside the scope of the MOA, TSG must prove all of the requirements for a binding contract in order to prevail under its implied-in-fact contract theory. Turning first to the authority of the Government representative to bind the United States in contract, TSG does not identify any particular Government representative at the MTF who entered into the alleged implied-in-fact contract, let alone a Government representative who could have been duly authorized to do so. In order to fulfill this element, TSG must allege facts sufficient to show that the Government representative who entered into its alleged implied-in-fact contract was a contracting officer or had implied actual authority to bind the Government.

While an MTF commander has authority to negotiate an MOA to the extent authorized in 10 U.S.C. § 1096, the commander must forward this MOA to the Director, CHAMPUS and the Surgeon General of the Army for approval prior to final execution of the agreement. *See* DOD Inst. 6010.12(F)(1) (implementing 10 U.S.C. § 1096 and 32 C.F.R. § 199.1). Section 1096 authorizes only the Secretary of Defense to enter into partnership agreements. Department of Defense Instruction 6010.12 delegates the authority to enter into partnership agreements to MTF commanders, contingent upon submission to the Director, CHAMPUS and the Surgeon General of the Army for approval. *See* DOD Inst. 6010.12(F)(1). An MTF commander does not have independent authority to enter into a partnership agreement.[3] TSG did not allege that the implied-in-fact contract was submitted for approval as required. No one at the MTF, including the MTF commander, had the independent authority to bind the Government. Therefore, this alleged implied-in-fact contract for the direct reimbursement of the x-ray technician cannot be enforced under the Tucker Act, even if TSG could show the remaining elements of contract formation.[4]

■ Thus, TSG cannot show either an express or implied-in-fact contract between itself and WACH. On this record, TSG would have to base any action against the United States on a contract implied-in-law or on a tort theory. The Court of Federal Claims lacks jurisdiction to hear these suits. *See Merritt,* 267 U.S. at 341, 45 S.Ct. at 279; *United States v. Nederlandsch–Ameri-kaansche Stoomvart Maatschappij,* 254 U.S. 148, 153, 41 S.Ct. 72, 73, 65 L.Ed. 193 (1920).

---

3. An MTF commander would have independent authority if he were also a duly appointed contracting officer, such as within the meaning of 48 C.F.R. § 1.601 and 41 U.S.C. § 601.

4. TSG's complaint alleges that Col. Perugini was a contracting officer within the meaning of section 601, and, thus, had authority to affirmatively obligate the Government in a employment contract. TSG provides no evidence of such authority. When specifically asked during oral argu-

ment before this court, counsel for TSG stated that 10 U.S.C. § 1096 gave Col. Perugini authority to serve as a contracting officer for the procurement of personnel. As discussed above, section 1096 merely authorizes MTF commanders to enter into partnership agreements, after submission for approval. Section 1096 contains no independent authority for MTF commanders to enter into employment contacts. This allegation is clearly insufficient.

## CONCLUSION

Because TSG cannot show the existence of an express or an implied-in-fact contract, and the breach thereof, the Court of Federal Claims properly dismissed for failure to state a claim under RCFC 12(b)(4).

## COSTS

Each party shall bear its own costs.

*AFFIRMED.*