Richard M. WARR, Plaintiff,

v.

The UNITED STATES, Defendant.

No. 99–288 C.

United States Court of Federal Claims.

March 31, 2000.

Richard M. Warr, Toppenish, WA, pro se.

Jonathan M. Coleman, with whom were David W. Ogden, Acting Assistant Attorney General, David M. Cohen, Director, Mark A. Melnick, Assistant Director, United States Department of Justice, Washington, DC, for defendant.

## OPINION AND ORDER

HEWITT, Judge.

This is a suit by the tenant of Native American allottees against the government for monetary damages arising out of crop losses on the rented land due to inadequate water supplies from the Wapato Irrigation Project. The action is before this court on Defendant's Motion to Dismiss, or in the Alternative, Motion for Summary for Judgment (Def.'s Mot.). With regard to the jurisdictional challenge, the primary issue is whether or not a contract existed between plaintiff tenant and the Bureau of Indian Affairs. Plaintiff first filed suit in the United States District Court for the Eastern District of Washington (District Court of Washington). Upon determining that the suit was more like a contract dispute than a tort and the amount in controversy exceeded $10,000, the District Court of Washington dismissed the action for want of jurisdiction. Plaintiff then filed suit in this court.

Defendant asserts that this court lacks jurisdiction over plaintiff's claim because plaintiff cannot establish privity of contract with the United States. More specifically, defendant asserts that plaintiff's lease was with Native American allottees, the heirs of Ida Scolowle of the Yakima Indian Nation, not the United States. Defendant further as-

serts that even if privity of contract were assumed, plaintiff's failure to pay annual irrigation assessments relieved the government from any obligation to deliver water to plaintiff.

For the following reasons, the court determines that it cannot exercise jurisdiction over plaintiff's action. The court believes, however, that the possibility exists that the District Court of Washington may have the authority to exercise jurisdiction over plaintiff's case pursuant to the Federal Tort Claims Act. Therefore, pursuant to 28 U.S.C. § 1631 (1994), the court transfers the matter to the United States District Court for the Eastern District of Washington. *See infra* section II.C.

## I. Background

### A. Statement of the Case

Unless otherwise noted, the following facts are taken from plaintiff's complaint.[1]

The Wapato Irrigation Project (the WIP) is charged with the delivery of water to designated lands on the Yakima Indian Reservation. The Department of the Interior, Bureau of Indian Affairs, administers the WIP. Employees of the WIP authorize delivery of water in accordance with federal regulations. Ditch riders employed by the WIP monitor the delivery of water.

On April 2, 1992, plaintiff entered into a five-year lease, for agricultural purposes, of allotted land on the Yakima Indian Reservation. As required by regulation, the lease was signed by the WIP Superintendent, acting as the authorized representative of the Secretary of the Interior, on May 26, 1992. Defendant's Appendix (Def.'s App.) at 6. *See* 25 C.F.R. § 162.5(a) (1999). Under the WIP, irrigable land is designated as either A or B land. Water allotted to A land may not be prorated. Water allotted to B land may be prorated. Plaintiff leased 37.5 acres each of A and B land.

Paragraph three of plaintiff's lease provided for the payment of all operation and main-

---

1. For purposes of its motion to dismiss, defendant treats as admitted the facts in plaintiff's complaint. Def.'s Mot. at 1 n. 1.

tenance assessments (O & M assessments or irrigation assessments), as well as any penalties and other charges, by the lessee prior to the start of each irrigation season. Def.'s App. at 2.

. Upon entering the lease, plaintiff undertook cultivation of forty acres of the leased land in anticipation of planting forty acres of pinto beans. Plaintiff states that he did this because he was assured by the WIP Superintendent that he would receive adequate water during the irrigation season to support forty acres. Plaintiff paid his irrigation assessment on May 14, 1992. In June 1992, plaintiff was advised by the WIP ditch rider that the WIP would deliver only enough water to irrigate twenty-two acres. In response, plaintiff planted twenty-two acres of pinto beans in late June and early July on his A (non-prorateable) land. Water delivery during the 1992 irrigation season was inadequate to maintain the soil moisture necessary to produce a successful crop. Plaintiff experienced crop destruction and low crop yields.

Prior to the start of the 1993 irrigation season, plaintiff conferred with the WIP Superintendent and was assured that he would receive enough irrigation water to farm his entire leased land. Plaintiff subsequently planted twenty-four acres of beans, twelve acres of wheat, and six acres of alfalfa. Water delivery was again insufficient to support plaintiff's crops. Plaintiff states that due to the WIP ditch rider's failure to police the lateral,[2] upstream water users received excess water to the detriment of plaintiff. Plaintiff experienced crop destruction and low yields.

Plaintiff did not pay his O & M assessment for the 1993 irrigation season until June 7, 1994. At that time, plaintiff also signed a promissory note to satisfy his O & M obligations for the 1994 irrigation season. Plaintiff's promissory note was due in full on October 31, 1994. Def.'s App. at 37. When he failed to pay on this note, plaintiff was directed to renegotiate the 1994 promissory note by the Project Administrator, Ernest Clark. Id. at 40–41. Plaintiff renegotiated

his 1994 promissory note on September 11, 1995. Id. at 48. By letter dated March 19, 1996, plaintiff was notified by Ernest Clark that he was in default on his renegotiated promissory note for the 1994 O & M assessment, which had been due in full on November 1, 1995. Id. at 50.

Prior to the delivery of water for the 1994 growing season, plaintiff received assurances from the WIP Superintendent that plaintiff would receive enough irrigation water to farm his entire leased land. Plaintiff planted thirty acres of corn, seventeen acres of wheat, and six acres of alfalfa. Defendant attempted to deliver an adequate water supply to plaintiff through the use of WIP canals, laterals, and control devices. However, defendant failed to maintain and monitor the water delivery system. Water deliveries during the 1994 season were again untimely and inadequate. Plaintiff attributes his water shortage to the receipt of excess water by upstream users on the lateral. Plaintiff was unable to maintain soil moisture and thereby experienced crop destruction and low yields.

In May 1995, plaintiff met with WIP personnel and was advised that he would receive his share of irrigation water. Plaintiff paid his O & M assessment for the 1995 irrigation season on June 6, 1995. Prior to the payment of his irrigation assessment, plaintiff planted seventeen acres of winter wheat and six acres of alfalfa. After the assessment was paid, plaintiff planted thirty-six acres of corn. Upstream users interfered with the flow of water in the lateral, thereby reducing the water received by downstream users, including plaintiff. Water deliveries to plaintiff for the 1995 irrigation season were inadequate to maintain proper soil moisture and plaintiff experienced crop destruction and low yields.

Plaintiff received notice from the WIP Superintendent on June 27, 1995, that his lease was being canceled for nonpayment of rent. See Def.'s App. at 51–52. This cancellation decision was upheld by the Portland Area Director on October 24, 1995. Id. at 53–55. The Board of Indian Appeals of the United

---

**2.** Plaintiff stated at oral argument that he was the "low man" on the lateral that provided water to him. Transcript of Oral Argument on January 7, 2000 (Trans.) at 48. There were, he believes, thirty-five users above him. Id.

States Department of the Interior affirmed the Area Director's determination by decision issued on January 13, 1997. *Id.* at 25–27.

Plaintiff filed suit against the United States in the United States District Court for the Eastern District of Washington on January 14, 1998. *Id.* at 78. In a decision filed on August 3, 1998, the district court granted defendant's motion to dismiss plaintiff's case for want of jurisdiction. *Id.* at 56–77. The district court's decision stated that plaintiff's cause of action sounded in contract, rather than tort, and met the statutory requirements for filing suit in the Court of Federal Claims. *Id.* Plaintiff, acting pro se, filed his Complaint in this court on May 10, 1999.

### B. Standard of Review

Defendant bases its Motion to Dismiss on Rules of the Court of Federal Claims (RCFC) 12(b)(1) and 12(b)(4). Rule 12(b)(1) provides for dismissal of a claim based on a "lack of jurisdiction over the subject matter." RCFC 12(b)(1). *See also* Fed.R.Civ.P. 12(b)(1). Whether a court possesses subject matter jurisdiction over a claim depends upon the "court's general power to adjudicate in specific areas of substantive law." *Palmer v. United States,* 168 F.3d 1310, 1313 (Fed. Cir.1999). Rule 12(b)(4) provides for dismissal based on the "failure to state a claim upon which relief can be granted." RCFC 12(b)(4). *See also* Fed.R.Civ.P. 12(b)(6). Rule 12(b)(4) addresses "the question of whether in a specific case a court is able to exercise its general power with regard to the facts peculiar to the specific claim." *Palmer,* 168 F.3d at 1313. Dismissal by this court under 12(b)(4) constitutes an adjudication on the merits of a claim. *Maniere v. United States,* 31 Fed.Cl. 410, 419 (1994).

The Supreme Court has stated that in weighing evidence in evaluating a motion to dismiss, "whether on the ground of lack of jurisdiction over the subject matter or for failure to state a cause of action, the allegations of the complaint should be construed favorably to the pleader." *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974); *Hamlet v. United States,* 873 F.2d 1414, 1416 (Fed.Cir.1989); *LaMir-*

*age, Inc. v. United States,* 44 Fed.Cl. 192, 196 (1999). In rendering a decision on a motion to dismiss, the court must presume that undisputed factual allegations in the complaint are true. *Miree v. DeKalb County,* 433 U.S. 25, 27 n. 2, 97 S.Ct. 2490, 53 L.Ed.2d 557 (1977); *Reynolds v. Army & Air Force Exch. Serv.,* 846 F.2d 746, 747 (Fed.Cir.1988); *La-Mirage, Inc.,* 44 Fed.Cl. at 196.

Summary judgment is appropriate when there are no genuine issues of material fact in dispute and the moving party is entitled to judgment as a matter of law. *See* RCFC 56(c); *see also Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Jay v. Secretary of Health and Human Servs.,* 998 F.2d 979, 982 (Fed.Cir.1993). A fact is material if it might affect the outcome of the suit under governing law. *See Anderson,* 477 U.S. at 248, 106 S.Ct. 2505. Determining which facts might affect the outcome of the suit depends on the substantive law that applies to the case. *See H.B. Zachry Co. v. United States,* 28 Fed.Cl. 77, 80 (1993), *aff'd,* 17 F.3d 1443, 1994 WL 6068 (Fed.Cir.1994). The court must resolve any doubts about factual issues in favor of the party opposing summary judgment, *Litton Indus. Prods., Inc. v. Solid State Sys. Corp.,* 755 F.2d 158, 163 (Fed.Cir.1985), to whom the benefits of all favorable inferences and presumptions run. *See H.F. Allen Orchards v. United States,* 749 F.2d 1571, 1574 (Fed.Cir.1984).

### II. Discussion

The jurisdiction of the United States Court of Federal Claims is provided by 28 U.S.C. § 1491 (1994) (the Tucker Act). The Tucker Act states:

> The United States Court of Federal Claims shall have jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort.

28 U.S.C. § 1491(a)(1). The Tucker Act waives the sovereign immunity of the United

States and grants the Court of Federal Claims jurisdiction over a claim where a substantive right exists elsewhere, such as in a contract or "money-mandating" statute or regulation. *See United States v. Mitchell,* 463 U.S. 206, 212, 103 S.Ct. 2961, 77 L.Ed.2d 580 (1983); *United States v. Testan,* 424 U.S. 392, 398, 96 S.Ct. 948, 47 L.Ed.2d 114 (1976). On its face, it is unclear whether plaintiff's claim is founded upon an "Act of Congress or any regulation of an executive department" or "upon an[ ] express or implied contract with the United States...." 28 U.S.C. § 1491.

In his Complaint, plaintiff alleges a breach of contract claim against the United States "for crop losses suffered due to the Wapato Irrigation Project's inability to supply Plaintiff with his pro-rata share of irrigation water." Complaint at p. 1. Throughout the complaint, plaintiff states, in effect, that arrangements made for the payment of irrigation assessments constituted a contract for the delivery of irrigation water, and that inadequate or untimely delivery of water was a breach of that contract. *See, e.g., id.* at ¶¶ 7, 15, 18, 23. Specifically, in Plaintiff's Memorandum in Opposition to Defendant's Motion to Dismiss (Pl.'s Opp.), plaintiff states:

> Plaintiff was assured verbally or in writing each by the defendent's (sic) Superintendent or Project Administrator that his share of irrigation water ... would be delivered on a continuous basis once his irrigation assessment was paid or arrangements for payment was made. The defend[a]nt was legally obligated to deliver the plaintiff's water. This constitutes an *EXPRESS CONTRACT.*

Pl.'s Opp. at 6. Plaintiff then quotes the definition for express contract in Black's Law Dictionary. *Id.*

Although plaintiff's Complaint focused on plaintiff's claim of express contract, plaintiff appeared to abandon that claim and focused instead on a statutory and regulatory basis for his claim. At oral argument on Defendant's Motion, defendant stated that plaintiff failed to establish privity of contract with the government. Transcript of Proceedings on January 7, 2000 (Trans.) at 27. In response,

plaintiff alleged that his claim does not rest on a contract with defendant. *Id.* at 24, 29. Plaintiff stated that his claim is "founded upon the act of Congress and also the regulations of an executive department." *Id.* at 29.

Plaintiff's Opposition appears to the court to address both statutory and contract bases for his claim. Plaintiff opposes Defendant's Motion by asserting that "[t]here is an *Express Contract* in addition to Federal mandates, Secretarial orders from a Federal agency, Water Regulations (BIA), Water Agreements and a Washington State Supreme Court decision." Pl.'s Opp. at 26.

In reviewing plaintiff's claim, the court recognizes that plaintiff is acting pro se, and therefore holds the form of plaintiff's submissions to a less stringent standard than those drafted by an attorney. *See Sanders v. United States,* 34 Fed.Cl. 75, 78 (1995), *aff'd,* 104 F.3d 376, 1996 WL 709860 (Fed.Cir. 1996). The fact that plaintiff is proceeding pro se does not, however, relieve plaintiff of the burden of establishing jurisdiction in this court. *Id.* In order to survive a motion to dismiss in this court, it is not enough for a plaintiff to state that he believes jurisdiction exists in this court. *Id.* "[A] plaintiff must specifically identify the contract or money-mandating provision that vests this court with jurisdiction." *Id.* (citing *Allred v. United States,* 33 Fed.Cl. 349, 353 (1995)). With this guidance in mind, the court has fully considered plaintiff's case and addresses this court's jurisdiction under the Tucker Act with respect to both plaintiff's contract and statutory-based claims.

A. Plaintiff's claim must fail to the extent it relies upon plaintiff's lease agreement or upon applicable statutes and regulations.

Whether or not plaintiff may maintain his claim for crop losses against the United States, based on plaintiff's lease agreement with the heirs of Ida Scowlole, depends upon whether the United States may be considered a party to the lease. Whether the United States may, alternatively, be held liable to plaintiff for failure to deliver adequate irrigation water requires an analysis of the government's role as the administrator of the WIP. Although these two matters arise out of two different relationships with plaintiff,

they overlap to the extent they are both related to the government's role as a fiduciary to the Native Americans.

1. The lease agreement does not support a Tucker Act claim.

■ In its motion to dismiss, defendant asserts that "the only contract present in the instant case is the lease agreement entered into between Mr. Warr and the Yakama[3] Tribal Council, on behalf of the heirs of Ida Scowlole." Def.'s Mot. at 18. Defendant further asserts that plaintiff cannot establish privity of contract between plaintiff and the United States based upon the lease agreement. *Id.* To the extent plaintiff's claim relies upon plaintiff's lease agreement defendant is correct.

In accordance with applicable statutory and regulatory requirements, plaintiff's lease agreement with the heirs of Ida Scowlole was approved by the Superintendent of the WIP. Def.'s App. at 6. *See* 25 U.S.C. § 415(a) (1994) (stating that "restricted Indian lands ... may be leased by the Indian owners, with the approval of the Secretary of the Interior...."); *see also* 25 C.F.R. § 162.5(a). Defendant alleges that its role in granting approval to the lease agreement does not put the United States in privity of contract with plaintiff. Def.'s Mot. at 18.

Defendant's position is supported by the decision rendered by the Supreme Court in *United States v. Algoma Lumber Co.*, 305 U.S. 415, 59 S.Ct. 267, 83 L.Ed. 260 (1939). In *Algoma*, the Algoma Company entered into individual contracts with Klamath Indian allottees for the sale of lumber on the allotments. *Algoma*, 305 U.S. at 419, 59 S.Ct. 267. The Secretary of the Interior (through the Superintendent of the Klamath Indian School) approved each of the contracts. *Id.* Facially, the contracts were contracts of the Klamath Indians executed by the Superintendent of the Klamath Indian School, acting as their agent. *Id.* at 421, 59 S.Ct. 267. The Court explained that the signature of the United States on an Indian contract did not,

by itself, demonstrate an intention by the United States to be bound in contract:

> The form of the contract and the procedure prescribed for its execution and approval conform to the long-established relationship between the government and the Indians, under which the government has plenary power to take appropriate measures to safeguard the disposal of property of which the Indians are the substantial owners. Exercise of that power does not necessarily involve the assumption of contractual obligations by the government. Their assumption is not to be presumed in the absence of any action taken by the government or on its behalf indicating such a purpose.

*Id.*

Respondents in *Algoma* attempted to bolster their case by asserting that the statute and regulations governing the role of the United States in executing contracts for the sale of lumber indicate a purpose to make the United States the contracting party. *Id.* at 422 (citing the Act of Congress of June 25, 1910, 36 Stat. 855, 857, 25 U.S.C. § 407 and its implementing regulations). Specifically, respondents pointed to the applicable regulations under which the Secretary was to prescribe the manner of sale of the lumber. *Id.* The Court explained that the United States could act as "protector of the Indians" without assuming obligations to third parties:

> [What] was done by the government officials in supervising the execution of the contracts and their performance was consistent with the exercise of its function as protector of the Indians without the assumption by the United States of any obligation to the purchasers of the timber, and no implied obligation on its part arises from the performance of that function.

*Id.*

Defendant also cites *Sangre de Cristo Dev. Co. v. United States*, 932 F.2d 891 (10th Cir.1991) in support of its position that the United States, acting as signatory to a lease agreement, does not become a party to the lease such that it could be sued by a party to

---

**3.** Defendant spells the name of the Indian Nation as both Yakama and Yakima throughout its briefing materials. We understand the correct spelling to be Yakima. *See generally Department of Ecology v. Yakima Reservation Irrigation Dist.,* 121 Wash.2d 257, 850 P.2d 1306 (1993).

the lease for breach of contract. Similar to the case presently before the court, the United States was acting pursuant to 25 U.S.C. § 415 when it granted its approval of the lease agreement in *Sangre de Cristo*. *Sangre de Cristo*, 932 F.2d at 895. Relying on the Supreme Court's decision in *Algoma*, the Tenth Circuit Court of Appeals determined that "the United States is not liable to third parties when it contracts with them on behalf of Indian tribes." *Id.* at 895 (citing *Algoma*, 305 U.S. at 423, 59 S.Ct. 267). Responding to appellant's arguments that *United States v. Mitchell*, 463 U.S. 206, 103 S.Ct. 2961, 77 L.Ed.2d 580 (1983) overruled *Algoma*, the Tenth Circuit noted that, unlike the case before it, the issue of whether the United States can be held liable to third parties when it contracts with third parties on behalf of Indian tribes was not an issue in *Mitchell*. *Id.* at 896.

This court finds the reasoning of the Tenth Circuit in *Algoma* applicable to this case. While *Algoma* and *Sangre de Cristo* decide whether the government may be responsible to third parties who contract with Native Americans, *Mitchell* addresses only the government's relationship with Native Americans.[4] *Algoma* was not overruled by *Mitchell*.

2. Applicable statutes and regulations do not support a Tucker Act claim.

■ The nature of plaintiff's interest as a lessee of Native American allotment land is also significant to plaintiff's claim that the statutory and regulatory scheme governing the WIP supports a Tucker Act claim. Plaintiff is an allotment *lessee*, not an allotment owner. However, even if this court were to view plaintiff's interest as equal to that of an allotment owner, plaintiff is still unable establish that any of the statutes or regulations governing the WIP can be fairly interpreted as mandating compensation by the federal government for failure to deliver adequate irrigation water to his leased land.

In *Grey v. United States*, 21 Cl.Ct. 285 (1990), *aff'd*, 935 F.2d 281 (Fed.Cir.1991), Native American allottees brought suit alleging a breach of duty by the government for the delivery of irrigation water to their allotted lands. The Claims Court[5] determined that the legislative and regulatory schemes relevant to plaintiffs' claims were not as pervasive as required by *Mitchell* to support a Tucker Act claim. *See Grey*, 21 Cl.Ct. at 294; *see also White Mountain Apache Tribe v. United States*, 46 Fed.Cl. 20, 25 (1999). In *Grey*, this court stated that "[t]he regulations governing irrigation of Indian lands are directed at the operation and maintenance of the water delivery system." *Grey*, 21 Cl.Ct. at 293. "Plaintiffs farm allotments in this case were not directly managed by the defendant. Plaintiffs were free to farm their own allotment, let the ground lie fallow for any number of valid, intentional reasons, or lease it to others." *Id.* at 294.

The statutory and regulatory analysis in *Grey* is wholly applicable to the present case. As in *Grey*, the court determines that plaintiff here cannot establish jurisdiction in this court under the statutory framework governing irrigation of allotment lands. Furthermore, plaintiff does not cite any statutes and regulations in addition to those addressed by

4. In *United States v. Mitchell*, 446 U.S. 992, 100 S.Ct. 2979, 64 L.Ed.2d 849 (1980) (*Mitchell I*) and *United States v. Mitchell*, 463 U.S. 206, 103 S.Ct. 2961, 77 L.Ed.2d 580 (1983) (*Mitchell II*), the Supreme Court set forth the standard for determining whether the Court of Federal Claims has jurisdiction to hear a claim brought by Native Americans for breach of statutory duty against the government. *See Grey v. United States*, 21 Cl.Ct. 285, 292 (1990), *aff'd*, 935 F.2d 281 (Fed.Cir.1991). Claimants in *Mitchell* were Native American allottees alleging mismanagement of timber resources on their individual allotments. In *Mitchell I* the Supreme Court determined that the General Allotment Act of 1887 created only a limited trust relationship between the Native American allottees and the govern

ment. The case was remanded and upon appeal of the remand to the Supreme Court in *Mitchell II*, the Court determined that, in contrast to the bare trust created by the General Allotment Act, the statutes and regulations governing the federal government's role in the management of Native American resources and land gave the government full responsibility for the management of these resources.

5. This court's name was changed from the "Claims Court" to the "Court of Federal Claims" in 1992 by the Federal Courts Administration Act of 1992, Pub.L. No. 105–572, 106 Stat. 4506 (1992).

the court in *Grey* that would require this court to determine otherwise. To the extent that plaintiff's claim for damages resulting from the receipt of inadequate irrigation water rests on the statutory and regulatory scheme governing the delivery of irrigation water, this court lacks jurisdiction.

B. Plaintiff has failed to establish a contract cause of action against the United States based upon representations made by a government official working for the WIP.

■■■ Plaintiff also alleges a contractual basis for his claim based upon oral representations made by the WIP Administrator in his Complaint. A claim based upon an oral contract is sufficient to confer subject matter jurisdiction in this court.[6] *See* RCFC 12(b)(1); *Trauma Serv. Group v. United States*, 104 F.3d 1321, 1325 (Fed.Cir.1997) (stating that "[a] well-pleaded allegation in the complaint is sufficient to overcome challenges to jurisdiction"). Assuming that plaintiff's pleadings may be construed to allege the existence of contract, the court must examine whether plaintiff's complaint states a claim upon which relief may be granted. *See* RCFC 12(b)(4); *Trauma Serv. Group*, 104 F.3d at 1325. Where, as here, the court is presented with matters outside the pleadings, a motion to dismiss for failure to state a claim is treated as a motion for summary judgment under Rule 56. *See* RCFC 12(b)(4); *Cook v. United States*, 32 Fed.Cl. 783, 785 (1995).

■■ To establish a valid contract, a plaintiff must show mutual intent to contract, including offer, acceptance, and consideration between the parties. *See Trauma Serv. Group*, 104 F.3d at 1325; *Perri v. United States*, 35 Fed.Cl. 627, 632 (1996); *Fincke v. United States*, 230 Ct.Cl. 233, 675 F.2d 289, 294–95 (1982). In suits against the United States, a plaintiff must also demonstrate that the government representative who entered the agreement had actual authority to bind the government. *See Trauma Serv. Group*, 104 F.3d at 1325; *City of El Centro v. United*

States, 922 F.2d 816, 820 (Fed.Cir.1990); *Perri,* 35 Fed.Cl. at 632.

■■ Plaintiff's pleadings indicate that plaintiff believes he had an express contract with defendant based upon meetings held between plaintiff and the WIP Superintendent or Project Administrator prior to each irrigation season. *See* Complaint at ¶¶ 6, 7, 14, 18, 22. In Plaintiff's Opposition, plaintiff states, "Plaintiff was assured verbally or in writing each by the defend[a]nt's Superintendent or Project Administrator that his share of irrigation water . . . would be delivered on a continuous basis once his irrigation assessment was paid or arrangements for payment was made. . . . This constitutes an *EXPRESS CONTRACT.*" Pl.'s Opp. at 6.

Defendant responds to the statements in the Complaint and Plaintiff's Opposition in two ways. In its Reply to Plaintiff's Opposition to Defendant's Motion to Dismiss or in the Alternative, Motion for Summary Judgment (Def.'s Reply) defendant focuses on defects in the formation of the alleged contract:

> Mr. Warr states within his opposition to defendant's motion to dismiss that either the WIP superintendent, Mr. Halvorson, or the WIP project administrator, gave Mr. Warr verbal and/or written assurances that he would receive his share of irrigation water "once his irrigation . . . assessment was paid or arrangements for payment was made." (citation omitted). However, the mere fact that Mr. Warr was required to pay the lessors' annual O & M assessment did not establish the elements of a contract with the Government, *i.e.,* (1) mutuality of intent, (2) lack of ambiguity in offer and acceptance, and (3) consideration. *Schuerman v. United States,* 30 Fed.Cl. 420, 425 (1994).

Def.'s Reply at 4, n. 2. Notwithstanding defendant's characterization in its Reply, the court does not believe that plaintiff's allegations of a claim based upon an oral contract

---

**6.** It is well-established that the Court of Federal Claims does not have jurisdiction to hear cases based upon contracts implied-in-law. *See Hercules, Inc. v. United States,* 516 U.S. 417, 423–24, 116 S.Ct. 981, 134 L.Ed.2d 47 (1996); *City of El Centro v. United States,* 922 F.2d 816, 820 (Fed.

Cir.1990). The court recognizes that, in order to exercise jurisdiction over plaintiff's contract claim, plaintiff's claim must be based upon either an express or an implied-in-fact contract. *See Hercules,* 516 U.S. at 423, 116 S.Ct. 981.

is relying exclusively on the requirement that he pay annual irrigation assessments. Instead, it appears that plaintiff's attempts to establish a contract claim are based upon the totality of the conversations he had with the WIP Superintendent at the pre-irrigation season annual meetings. Accordingly, defendant's arguments in its Reply fail fully to address plaintiff's claim and therefore, without more, fail to defeat jurisdiction.

Defendant's second response to plaintiff's efforts to establish an oral contract with defendant is, in effect, an attempt to invoke this court's power to dismiss plaintiff's claim for "failure to state a claim" due to plaintiff's failure timely to pay his annual irrigation assessments. *See* Def.'s Mot. at 30–34; RCFC 12(b)(4). Defendant states that because plaintiff failed to timely pay his irrigation assessments, defendant was under no obligation to deliver water to plaintiff. Def.'s Mot. at 30. Where no obligation existed, no breach could have occurred. *Id.* In its motion, defendant states:

> Assuming that Mr. Warr could establish privity of contract with the government by virtue of the lease ... the requirement in the lease that Mr. Warr pay his O & M assessment annually in advance of the due date was a condition he was required to meet before receiving irrigation water. Significantly, Mr. Warr's failure to timely pay all of the O & M assessments due for 1993 through 1996 relieved the defendant from any obligation to delivery water to his leased allotment.

*Id.* The court is in agreement with defendant on this issue. Even with the benefit of all favorable inferences, plaintiff still fails to establish an obligation to deliver irrigation water on the part of the defendant, which obligation was breached. *See Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974) (stating that in determining the sufficiency of a complaint the "allegations of the complaint should be construed favorably to the pleader." The test is not whether "recovery is very remote and unlikely."); *see also Hamlet v. United States,* 873 F.2d 1414, 1416 (Fed.Cir.1989).

Federal regulations establish the framework for the administration of irrigation projects on Native American land. Under applicable regulations, plaintiff was obligated to pay, or arrange payment of, irrigation assessments for his leased land prior to the start of each irrigation season. *See* 25 C.F.R. § 162.13; 25 C.F.R. § 171.17(b). Pursuant to 25 C.F.R. § 171.2, the Officer–in–Charge establishes the dates that comprise the irrigation season. *See* 25 C.F.R. § 171.2. The Officer–in–Charge may be "[t]he Agency Superintendent, Project Engineer or such official as authorized by the Area Director." 25 C.F.R. § 171.1. April 1st was the established commencement date for the Wapato Irrigation Project's irrigation season during the period relevant to plaintiff's lease. *See* Def.'s App. at 11–16. There is nothing in the record that indicates plaintiff satisfied the requirement to pay his irrigation assessments prior to April 1 for any of the years involved in this case.[7]

---

7. It appears from the record that an exception to plaintiff's nonpayment may exist with respect to 1992. However, the statute of limitations has run on plaintiff's claim for 1992. The applicable statute of limitations in the Court of Federal Claims is six years. *See* 28 U.S.C. § 2501 (1994). In both Plaintiff's Opposition and Plaintiff's Motion for Removal of Time Bar on 1992 Claim (Pl's Mot.), plaintiff states the that loss for his 1992 claim occurred on October 14, 1992. See Pl.'s Opp. at 23; Pl.'s Mot. at 1. Plaintiff's Complaint was filed in this court on May 10, 1999, approximately seven months after the expiration of the statute of limitations.

In defense of plaintiff's failure to file his Complaint within the applicable statutory period, plaintiff asserts that "[t]he United States District Court failed to timely transfer the Plaintiff's case to the court that had jurisdiction in this case ..." Pl.'s Mot. at 1. The Federal Transfer Statute, 28 U.S.C. § 1631, governs transfers to cure want of jurisdiction. *See Faulkner v. United States,* 43 Fed.Cl. 54, 55 (1999). The statute states, "Whenever a civil action is filed in a court ... and that court finds that there is a want of jurisdiction, the court shall, if it is in the interest of justice, transfer such action or appeal to any other such court in which the action or appeal could have been brought at the time it was filed or noticed ...." 28 U.S.C. § 1631. The decision to transfer a case is within the discretion of the district court. *See Faulkner,* 43 Fed.Cl. at 56; *see also infra* section II.C.

The only remedy available to this court would be to equitably toll the limitations period based on the date plaintiff filed his case in the District Court of Washington. There are two situations in which a court will toll a statute of limitations period. *See Entines v. United States,* 39 Fed.Cl. 673, 680 (1997), *aff'd,* 185 F.3d 881, 1999 WL

There is also nothing in the record to indicate that plaintiff may have been unaware of his obligation to pay an annual irrigation assessment. As evidenced in Plaintiff's Opposition, plaintiff was made aware of his obligation to pay irrigation assessments through his conversations with the WIP Superintendent or Project Administrator. *See* Pl.'s Opp. at 6. The terms of plaintiff's lease agreement also put plaintiff on notice of this obligation. Def.'s App. at 2. Paragraph three of plaintiff's lease states, "It is understood and agreed that the lessee will pay all operation and maintenance assessments annually in advance on the due date preceding each irrigation season...." *Id.*

Throughout the term of plaintiff's lease, plaintiff did not timely pay his O & M assessments. In Plaintiff's Opposition, plaintiff admits that he did not pay his O & M assessment for the 1993 irrigation season until June 7, 1994. *See* Pl.'s Opp. at 9. At that time, plaintiff also signed a promissory note to satisfy his O & M obligations for the 1994 irrigation season. *See* Def.'s App. at 36. To date, plaintiff has not paid his assessments for the 1994 irrigation season. *See id.* at 16, 50. Plaintiff's assessment for 1995 was paid on June 14, 1995. *See* Pl.'s Opp. at 10.

To establish a claim upon which relief may be granted, plaintiff carries the burden of showing the existence of a contractual agreement with defendant, and breach of that contract. *See Trauma Serv. Group,* 104 F.3d at 1325. Because plaintiff has not established an obligation of the United States as to which there could have been a breach, the court grants summary judgment in favor of the government on this issue pursuant to Rule of the Court of Federal Claims 56.

C. Plaintiff's claim may be a tort cause of action, thereby vesting jurisdiction in the district court.

▮ The determination of whether to transfer a case is left to the discretion of the

transferor court, based upon the "peculiar facts and circumstances" of the case. *Bienville v. United States,* 14 Cl.Ct. 440, 445 (1988). *See also Faulkner v. United States,* 43 Fed.Cl. 54, 56 (1999). In deciding to dismiss plaintiff's case without prejudice, the District Court of Washington stated that "[p]laintiff's purported tort claims implicate the manner in which government officials executed their duties with respect to performance of the contract." Def.'s App. at 76. Although this court decides that plaintiff's claim regarding defendant's obligation to deliver irrigation water cannot be based on a contract, the court is not convinced that plaintiff is without remedy in this matter. *Cf. Faulkner,* 43 Fed.Cl. at 56 (holding that retransfer to district court would be futile where district court determined it was without jurisdiction to hear plaintiff's claim).

Because parts of plaintiff's claim may sound in tort, the court is unable to rule out the possibility of relief in district court under the Federal Tort Claims Act. The Court of Federal Claims does not possess jurisdiction to hear cases sounding in tort. *See* 28 U.S.C. § 1491(a)(1). Because the possibility exists that plaintiff may have a cause of action existing outside of his contract claim, the court believes plaintiff should be entitled to bring his action before the district court. *See* Federal Tort Claims Act, 28 U.S.C. § 1346(b) (1994). For example, plaintiff alleges crop loss and damage due to water he did not order or pay for in April 1992. Pl.'s Opp. at 9. Based on the foregoing, this court exercises its discretion to transfer this matter to the District Court of Washington pursuant to 28 U.S.C § 1631.

III. Conclusion

For the foregoing reasons, Defendant's Motion is GRANTED. The Clerk of the Court is directed to transfer the case to the United States District Court for the Eastern

---

133052 (Fed.Cir.1999). A plaintiff must show that either defendant has deliberately concealed facts relevant to the plaintiff's claim or that the facts surrounding the plaintiff's injury were unknowable at the time the injury occurred. *See id.* (citing *Mitchell v. United States,* 13 Cl.Ct. 474, 477 (1987)). Neither of these situations is applicable to plaintiff's case. The decision to transfer

plaintiff's claim was entirely within the discretion of the district court. The district court's decision to dismiss rather than transfer should have been challenged in that jurisdiction, not here. Although this result may appear harsh, the statute of limitations is a jurisdictional bar that cannot be waived. *See Camacho v. United States,* 204 Ct.Cl. 248, 494 F.2d 1363, 1368 (1974).

District of Washington pursuant to 28 U.S.C. § 1631.

IT IS SO ORDERED.