NOTE: Pursuant to Fed. Cir. R. 47.6, this disposition is not citable as precedent. It is a public record.

# United States Court of Appeals for the Federal Circuit

06-5022

INDUSTRIAL DOOR CONTRACTORS, INC.,

Plaintiff-Appellant,

v.

UNITED STATES,

Defendant-Appellee.

_____

DECIDED: September 22, 2006
_____

Before NEWMAN, MAYER, and LINN, Circuit Judges.

PER CURIAM.

Industrial Door Contractors, Inc. ("IDC") appeals the final judgment of the United States Court of Federal Claims, which granted summary judgment in favor of the United States. Indus. Door Contractors, Inc. v. United States, No. 01-CV-411 (Fed. Cl. Sept. 21, 2005). We reverse and remand.

In 2000, the Smithsonian Institution ("Smithsonian") advertised for the construction of the Udvar Hazy Center, which is part of its National Air and Space Museum. The solicitation included a project for the manufacture and installation of

three hangar doors at the new center. On July 26, 2000, IDC, a prospective subcontractor for the project, filed a protest asserting that certain solicitation aspects, including the years of experience required, requiring such experience for each door, and requiring a single manufacturer for all doors, were unduly restrictive. Along with its protest, IDC submitted its experience for two of the door types, but not the third type. On that same day, but prior to receiving IDC's protest, the Smithsonian issued an amendment to the solicitation that, inter alia, lowered the experience requirement from 35 years to 5 years, but still required such experience for each door type and a single manufacturer for all of the doors.

John Lapiana, Assistant General Counsel for the Smithsonian, was assigned to represent the Smithsonian in IDC's protest. On August 10, 2000, he sent IDC's attorney a letter by facsimile stating:

> This letter confirms our conversation today that, based upon the information submitted to the General Accounting Office in the course of this protest, Industrial Door Contractors, Inc. ("IDC") satisfies the door manufacturer experience requirements as set forth in the solicitation. This determination is made pursuant to the modifications issued contemporaneously with the filing of this protest and, in no way, should be interpreted as an endorsement or prior evaluation of any bid that IDC may submit or otherwise participate in, except to the extent described above.
>
> As I believe you are aware, the deadline for bids on the project has been extended to August 24, 2000.
>
> If there is any additional information that you may need in withdrawing the protest, please do not hesitate to contact me.

This letter was accompanied by a cover sheet stating, "Is this sufficient?" In light of this letter, IDC withdrew its protest.

After the prime contract for the project was awarded, the contractor instructed IDC to provide a submittal to the project's architect. IDC's submission did not contain any information on its experience in manufacturing one of the door types, and the Smithsonian and the contractor rejected it, stating that the experience requirements were not met and the information provided was incomplete. IDC was requested to prepare a revised submission, but after attempts to resolve the dispute failed, IDC sued the government in the Court of Federal Claims, claiming that the August 10th letter reflected a settlement agreement that the government breached. The court granted summary judgment in favor of the government, holding there was no mutual intent to contract because the alleged offer was ambiguous.

"In the absence of factual disputes, the question of contract formation is a question of law, reviewable de novo." Trauma Serv. Group v. United States, 104 F.3d 1321, 1325 (Fed. Cir. 1997) (citations omitted). "Any agreement can be a contract within the meaning of the Tucker Act provided that it meets the requirements for a contract with the Government, specifically: mutual intent to contract including an offer and acceptance, consideration, and a Government representative who had actual authority to bind the Government." Cal. Fed. Bank, FSB v. United States, 245 F.3d 1342, 1346 (Fed. Cir. 2001) (citations omitted). A claimant may establish the presence of an offer by showing the offeror's "manifestation of willingness to enter into a bargain, so made as to justify another person in understanding that his assent to that bargain is invited and will conclude it." Anderson v. United States, 344 F.3d 1343, 1353 (Fed. Cir. 2003) (quoting Restatement (Second) of Contracts § 24 (1981)) (additional citation omitted).

Contrary to the trial court's finding, the government made an unambiguous offer to IDC, as reflected in its August 10th letter stating that IDC "satisfies the door manufacturer experience requirements as set forth in the solicitation." Although IDC had not submitted, and the government had not reviewed, its qualifications for one of the doors when this offer was made, we do not read the language "based upon the information submitted . . . in the course of this protest" as limiting the statement that IDC met the experience requirements. Instead, it merely provided the basis, however justified or unjustified, for reaching the conclusion that IDC was qualified. Nor does the final sentence in the first paragraph limit the qualification statement: "This determination . . . in no way, should be interpreted as an endorsement or prior evaluation of any bid that IDC may submit or otherwise participate in, <u>except to the extent described above</u>." (emphasis added). To the contrary, the phrase "except to the extent described above" indicates that there was an endorsement or prequalification in the letter, but that it extended no further than recited there. This sentence means that IDC still had to compete for the bid and meet any <u>other</u> requirements, but it did not limit the previous statement that IDC met the experience requirements for the entire solicitation. Because the offer was not ambiguous, the trial court erred in finding no mutuality of intent to contract on this ground.

The circumstances show a mutual desire to enter into a contractual agreement. The government sent the August 10th letter, stating "If there is any additional information that you may need in withdrawing the protest, please do not hesitate to contact me." In light of this language, there can be no doubt that the letter was sent in contemplation of the protest being withdrawn. The government also previously

indicated that it would move to dismiss the protest if it was not "otherwise resolved," which further indicates a willingness to settle the dispute.

All remaining elements of contract formation have been established. It is indisputable that IDC accepted the government's offer and that consideration was present, namely IDC withdrawing the protest in exchange for the prequalification. And as the attorney assigned to represent the Smithsonian in IDC's protest, Lapiana had authority to settle the protest. On remand, the trial court must determine whether the contract was breached and, if so, fashion an appropriate remedy.