ARMED SERVICES BOARD OF CONTRACT APPEALS

| | |
|---|---|
| Appeal of -- ) | |
| ) | |
| International Automotriz ) | ASBCA No. 59665 |
| ) | |
| Under Contract No. W912QM-13-P-0075 ) | |

APPEARANCE FOR THE APPELLANT:      Sra. Doris Elizabeth L. Sibrian
                                                  Owner

APPEARANCES FOR THE GOVERNMENT:      Ray M. Saunders, Esq.
                                                  Army Chief Trial Attorney
                                                  Kyle E. Chadwick, Esq.
                                                  Trial Attorney

OPINION BY ADMINISTRATIVE JUDGE NEWSOM

Appellant seeks compensation for damage to four vehicles that it rented to the Army. The Army admitted responsibility for the damage and paid the appellant $12,947.88. Not satisfied, appellant seeks more than $189,412.12 in additional damages, including lost rental income, interest on loans, and other damages. For the reasons set forth below, we hold that appellant has already received compensation for the damage for which the government is responsible and deny appellant's appeal insofar as it seeks additional damages.

FINDINGS OF FACT

1. On 7 June 2013, the Army awarded Contract No. W912QM-13-P-0075 (the Contract) to appellant, International Automotriz, a company located in El Salvador (R4, tab 1 at 1). The Contract called for appellant to rent three vehicles – one sport utility vehicle (SUV) and two pickup trucks – to special forces personnel in El Salvador, in exchange for a rental fee of $65 per day per vehicle (R4, tab 1 at 4, 12).

2. Originally, the Contract called for 106 rental days for the SUV and 102 days for each of the pickup trucks, for a total Contract value of $20,150 (R4, tab 1 at 4, 12). On 1 August 2013 the parties executed a bilateral modification changing the rental period and reducing the total Contract value to $17,420 (R4, tab 2).

3. The Contract incorporated Federal Acquisition Regulation (FAR) clause 52.228-8, LIABILITY AND INSURANCE – LEASED MOTOR VEHICLES (MAY 1999) (R4, tab 1 at 4), which stated that the government:

(a)...shall be responsible for loss of or damage to–

(1) Leased vehicles, except for (i) normal wear and tear and (ii) loss or damage caused by the negligence of the Contractor, its agents, or employees....

4. International Automotriz delivered the vehicles on 24 June 2013 to U.S. service member, Chief Adam Davis, in El Salvador (tr. 60, 104; R4, tab 1 at 12; app. supp. R4, tab 2).

5. International Automotriz typically provides a copy of its standard rental agreement to persons who rent its vehicles (tr. 106). Accordingly, at delivery, Chief Davis received, and he signed, International Automotriz's rental agreement (tr. 60, 106-07; app. supp. R4, tab 6A). This rental agreement was mostly in Spanish with portions translated into English (app. supp. R4, tab 6A). The English translation stated, among other things:

### RENTAL AGREEMENT

Celebrate the present agreement "Doris Elizabeth López Sibrian", as the renter in this city for effect of the present contract will be called "THE LESSOR" and the person designed in the beginning on the contract will be called "THE LESSEE".

....

9. It will be the "THE LESSEE" responsibility to pay the rento for period that the vehicle stays in the repair shop due to an accident in concept of dismissed lucre.

....

16. In order to valid the collision damage waiver "THE LESSEE" must present a police report of the collision of the accident. Other way "THE LESSEE" will be responsible for all the damage of the vehicle.

(App. supp. R4, tabs 6, 6A at 1)

6. The contracting officer, however, did not sign the International Automotriz rental agreement and did not have that rental agreement when he awarded the Contract (app. supp. R4, tab 6; tr. 105-07). Indeed, International Automotriz's owner and General

2

Manager, Sra. Doris Sibrian[1], testified that she first discussed the rental agreement with the contracting officer when International Automotriz submitted its claim (tr. 107-08). There is no evidence in the record that Chief Davis had actual authority to bind the government, and none to indicate that the contracting officer ratified appellant's standard rental agreement.

7. After the government picked up the vehicles, the SUV – a Toyota Prado – was damaged, and the government returned it early to International Automotriz (tr. 61). On 30 September 2013, International Automotriz provided a replacement SUV, a Ford Everest (tr. 61-62; app. supp. R4, tab 5).

8. International Automotriz repaired the damaged Toyota Prado in October 2013 (tr. 70, 81). After repairing the Toyota, International Automotriz did not rent that vehicle to other clients. International Automotriz's owner, Sra. Sibrian, used the Toyota for her personal transportation. (Tr. 113-14)

9. The government used the three vehicles until approximately 2 November 2013, when it returned them. All three had been damaged while in the government's possession. (App. supp. R4, tab 6 at 3) Photographs showed scratches and dents on them (R4, tab 5).

10. Sra. Sibrian contacted the Army contracting office to seek compensation for the vehicle damage and was advised to submit a claim (R4, tabs 3-6). On 25 November 2013, she submitted a claim on behalf of International Automotriz (R4, tab 4). Initially, International Automotriz claimed $10,073.91, comprising $8,123.91 in total repair costs and $1,950 for lost rental value per vehicle for each of three of the vehicles. The company calculated the lost rental value by assuming ten lost rental days per vehicle, multiplied by three vehicles, multiplied by the Contract rental rate of $65 per day. At the time, International Automotriz did not seek damages for the Toyota Prado, stating that it "was already repaired and we will assume the cost." (R4, tab 4 at 6)

11. Meanwhile, beginning before 2013 and continuing in 2014 and thereafter, International Automotriz's finances were deteriorating. Its 31 December 2013 financial statements showed "Loss From Previous Years" of $26,550, resulting in negative equity of $11,420.10. By year-end 2013, appellant held less than $10,000 in cash and accounts receivable and owed more than $96,000 in debts. (App. supp. R4, tab 28 at 1) Additionally, on 19 November 2013 – less than one month after the government returned the vehicles – a creditor sent notice threatening legal action against International Automotriz's for debts in arrears (app. supp. R4, tab 21 at 2). Based on the losses prior to 2013, the magnitude with which appellant's debts exceeded its cash and accounts receivable at year-end 2013, and the November 2013 creditor demand, we find that the

---

[1] We refer to appellant's owner as "Señora Sibrian" or "Sra. Sibrian," because we understand that it is how she prefers to be addressed.

deterioration of appellant's finances began well before it was awarded the Contract at issue in this appeal.

12. As a result of its deteriorating finances, during 2014, International Automotriz was unable to pay at least some of its creditors (tr. 28-30, 38-39, 79-80), so it borrowed more money. On 16 January 2014, it borrowed $10,000 at a monthly interest rate of 5%, plus a 5% surcharge for payments in arrears. In November 2014, it borrowed another $1,500 at a monthly interest rate of 9.9%. (App. supp. R4, tab 21 at 26; tr. 29-30, 44-45, 52)

13. Although these loans demonstrate that International Automotriz had borrowing capacity, appellant never sought a loan for money to repair the vehicles (tr. 70-71). Instead, International Automotriz gradually sold the four vehicles at issue (tr. 109, 112-13). It sold one in 2013, another in 2014, and the two remaining vehicles in 2015. The Board finds as follows:

- The Nissan Frontier was not listed among the assets of International Automotriz as of year-end 2013, therefore we find that International Automotriz sold that vehicle sometime in 2013 (app. supp. R4, tab 21 at 19, tab 28).
- The Ford Everest was listed among the assets of International Automotriz as of year-end 2013, but not as of year-end 2014, therefore we find that International Automotriz sold the Ford Everest sometime during 2014 (app. supp. R4, tab 28).
- International Automotriz sold the Toyota Prado on 6 January 2015 (app. supp. R4, tab 21 at 13).
- One of International Automotriz's creditors took possession of the Mitsubishi in March 2015 as collateral for a debt (app. supp. R4, tab 21 at 26). Sra. Sibrian characterized this transaction as a vehicle sale (tr. 109).

14. Appellant did not provide to the Board the prices at which it sold the vehicles despite the Board's request for that information. In its 27 April 2015 post-hearing order, the Board asked appellant to "[i]dentify the exact date(s) on which each vehicle was sold, and the sale price (or amount of debt assumed by the buyer), and a citation to the appeal file by tab and page number evidencing the sale." Appellant instead provided the date that appellant's debt on each vehicle was paid off, rather than the date that appellant sold each vehicle. Appellant also did not provide the sale price or amount of debt assumed by the buyer. (App. br. at 1)

15. Six months after the company submitted its claim to the contracting officer, the claim remained unresolved. On 20 May 2014, Sra. Sibrian submitted an updated claim increasing the demand to $48,915. This updated claim added damages for the Toyota Prado and additional days of lost rental value for each vehicle. The revised claim now sought $10,500 for a "deductible" and $38,415 in lost rental value, measured "from the time [the vehicles] were damage[d] until the date this claim gets resolved."

4

International Automotriz assumed 197 days of lost rent per vehicle at the Contract rental rate of $65 per vehicle per day. The updated claim also sought damages for "consequence costs" and "anguish" to Sra. Sibrian and appellant. (R4, tab 8)

16. About a month later, on 16 June 2014, the contracting officer issued a written final decision to reimburse International Automotriz $12,762.42 out of the $48,915 claimed at that time, plus interest. International Automotriz received the decision the same day. (R4, tab 10 at 2; app. supp. R4, tab 16) The award consisted of $9,187.42 "for the actual costs of damage...derived from the repair quotes" plus $3,575 in lost rental value for the number of days estimated to be required to repair each vehicle. The contracting officer assumed 12 days each to repair the Nissan, Ford, and Mitsubishi, and 19 days to repair the Toyota, for a combined total of 55 days. The contracting officer assumed a rental rate for each vehicle at the same rate the government paid, $65 per day per vehicle. The total granted per vehicle, excluding interest, was as follows:

- 2012 Nissan Frontier, Plate #72002:     $3,090.55
  - 12 repair days @ 65.00 per day =     $780.00

- 2008 Ford Everest, Plate #606507:     $3,316.55
  - 12 repair days @ 65.00 per day =     $780.00

- 2010 Mitsubishi Sport, Plate #641225     $1,716.81
  - 12 repair days @ 65.00 per day =     $780.00

- Toyota Prado, Plate #548169     $1,063.51
  - 19 repair days @ 65.00 per day =     $1,235.00

  TOTAL:     $12,762.42

(R4, tab 10 at 2)

17. Processing the payment took approximately three months from the date of the contracting officer's decision. First, on 27 August 2014, the contracting officer issued, and appellant signed, a contract modification to authorize payment (R4, tab 11). Then, on or about 17 September 2014, the government wired $12,947.88 to Sra. Sibrian's bank account (app. supp. R4, tab 20). This amount included $185.46 in interest (*compare id. with* R4, tab 10 at 2). The modification stated expressly that International Automotriz "retains the right to appeal the Contracting Officers Final Decision" to this Board or to the United States Court of Federal Claims (R4, tab 11 at 2).

18. International Automotriz did not use the government's 17 September 2014 payment to repair the remaining vehicles (tr. 116-17). Indeed, as noted above, by September 2014 the company had already sold the Nissan Frontier, and possibly also the

5

Ford Everest (finding 13). Instead, International Automotriz used the government payment to pay other debts (tr. 56, 117).

19. In this litigation, International Automotriz asserts that it lost opportunities to rent the vehicles to other clients because the vehicles were damaged (app. br. at 1). The documents that it offers to show lost vehicle rental opportunities are in Spanish with only an English summary, not a translation of each document (app. supp. R4, tab 21 at 41-51). Each of those documents bears a date in 2015, as the English summary confirms (app. supp. R4, tab 21 at 41-51). Thus, they do not show lost vehicle rental opportunities in 2013 or 2014. Other documents that the company offered for support of lost vehicle rent related instead to opportunities to provide cell phones to customers, not rental vehicles (app. supp. R4, tab 21 at 52-55).

20. Sra. Sibrian testified that the company rented 30 vehicles to clients from Taiwan in July 2014. She explained that the company provided the vehicles by obtaining them from colleagues, rather than from its own fleet. (Tr. 115-16)

21. Following receipt of the contracting officer's decision, Sra. Sibrian contacted the Board by email in Spanish on 20 August 2014, and through additional email and telephone communications on 21 August 2014, Board staff learned that Sra. Sibrian sought to initiate an appeal (app. supp. R4, tab 18 at 2). An English translation of one of Sra. Sibrian's emails stated that she "presented a claim which was unjustly resolved," she intended "to find out how to resolve this issue," and she requested guidance (21 August 2014 email, English translation). Board staff directed Sra. Sibrian to assemble the relevant documents and send them to the Board, which she did (18 December 2014 correspondence). The appeal was formally docketed on 7 November 2014.

22. The Board held a hearing on 22 April 2015 (tr. 1). In its 7 May 2015 post-hearing brief, International Automotriz calculated its damages at more than $189,412.12 through the hearing date, with a continuing claim up to the date of payment (app. br. at 2; tr. 98, 114).

## DECISION

The Board has jurisdiction pursuant to the Contract Disputes Act of 1978, 41 U.S.C. §§ 7101-7109.[2]

---

[2] As noted above, appellant received the contracting officer's decision on 16 June 2014 (finding 16), and sent emails to the Board on 20-21 August 2014 expressing dissatisfaction with the final decision and an intention to appeal (finding 22). The 20-21 August 2014 emails satisfy the criteria for an effective notice of appeal. *ESA Environmental Specialists, Inc.*, ASBCA No. 55620, 07-1 BCA ¶ 33,573 at 166,312. Accordingly, this appeal is timely.

6

In this appeal, the government admits responsibility for damaging the vehicles (answer ¶ 18; gov't br. ¶ 23). Indeed, when the government rents property from a contractor, a bailment for the mutual benefit of the parties is created. *Mohammad Darwish Ghabban Est.*, ASBCA No. 51994, 00-2 BCA ¶ 31,114 at 153,671; *Analog Precision, Inc.*, ASBCA Nos. 31277, 32877, 87-2 BCA ¶ 19,804 at 100,170; *Innovations Hawaii*, ASBCA Nos. 30619, 30627, 87-1 BCA ¶ 19,376 at 97,967. The return of bailed property in a state unfit for service may give rise to a claim for damages. *Mohammad Darwish*, 00-2 BCA ¶ 31,114 at 153,671; *Manufactured Housing Services, Inc.*, ASBCA No. 41269 *et al.*, 92-3 BCA ¶ 25,159 at 125,407.

Here, the sole dispute concerns quantum. International Automotriz claims more than $189,412.12 (in addition to the $12,947.88 already paid by the government) consisting of two elements. First, it claims more than $139,412.12 in lost rent that it allegedly would have earned by renting the vehicles to other clients, had the vehicles not been damaged. Second, it seeks another $50,000 in compensation for interest on borrowed funds, litigation expenses, harm to its business reputation, and compensation for emotional harm to appellant's owner.[3] (App. br. at 1; app. supp. R4, tab 27; tr. 117)

The legal framework governing damages is disputed. The government argues that FAR 52.228-8, LIABILITY AND INSURANCE – LEASED MOTOR VEHICLES (MAY 1999), limits its liability so that the government is obligated only to pay for loss or damage to the leased vehicles and not consequential damages such as lost rental income (gov't br. at 6). Appellant claims entitlement to lost rent and other consequential damages, relying in part on its standard rental agreement (finding 5; app. 20 January 2015 corr.). Alternatively, under the common law of bailment, appellant may be entitled to "damages...proximately caused" by the government's failure to safeguard the vehicles, *Manufactured Housing*, 92-3 BCA ¶ 25,159 at 125,407; *accord* 8 C.J.S. *Bailments* § 148 at 605 (2005), which can include the "loss of income resulting from the inability to use the property." 46 AM JUR. 3D 361, *Proof of Facts* § 17 (1998). Appellant would be required to prove, among other things, that the government's failure to use ordinary care caused its claimed losses, and it must prove its losses with reasonable certainty. 8 C.J.S. *Bailments* §§ 146-48 at 603-06; *cf. Wells Fargo Bank, N.A. v. United States*, 88 F.3d 1012, 1021 (Fed. Cir. 1996).

It is unnecessary to resolve this dispute, because under any of these standards, appellant has not proved its damages. If, as the government contends, FAR 52.228-8 limits the government's liability only to the cost of vehicle repair, then appellant is entitled to nothing more. The government has already paid vehicle repair costs (findings 16, 17). If appellant's vehicle rental agreement defines appellant's damages,[4]

---

[3] The demands for lost rent, plus consequential, reputational and emotional harm were part of appellant's updated claim (finding 15).

[4] There is no showing that appellant's rental agreement was signed or ratified by anyone with authority to bind the government (finding 6). Accordingly that document

appellant would be entitled to nothing more. That agreement provided for payment of lost rent "for the period that the vehicle stays in the repair shop" – an amount which the government already paid (findings 5, 16, 17). If the common law of bailment governs damages, then, as is explained below, appellant has not met its burden to prove that the government caused its damages, nor has it proved its damages with reasonable certainty.

Regarding its demand for lost rent, International Automotriz assumes that but for the vehicle damage, it would have rented all four vehicles to other clients at $65 per day per vehicle, every single day from 2 November 2013 to the present – more than 537 consecutive days per vehicle, or a combined total of more than 2,148 consecutive days for all four vehicles. These assumptions are not credible and are inconsistent with appellant's actual conduct.

Significantly, when appellant had opportunities to repair the vehicles and rent them to other clients, it did not do so. International Automotriz repaired the Toyota in October 2013, after which that vehicle was available to rent to other clients (finding 8). International Automotriz chose not to rent it to other clients, as Sra. Sibrian used that vehicle herself (*id.*). If appellant lost rental income on the Toyota, appellant's decisions were the cause, not the government's failure to exercise due care.

Similarly, appellant did not repair the remaining vehicles even after the government paid the repair costs (findings 16-18). Instead, appellant applied that money to other debts (finding 18). If appellant lost rental income from the vehicles after 17 September 2014, appellant's decision not to repair the vehicles were the cause, not the government's failure to exercise due care. Certainly, moreover, appellant's decision to sell the vehicles precludes damages for lost rent after the vehicles were sold. International Automotriz's actual conduct is inconsistent with lost rent theory, and it cannot establish a causal link between the vehicle damage and the claimed lost rental income. *California Federal Bank v. United States*, 395 F.3d 1263, 1267 (Fed. Cir. 2005).

Furthermore, International Automotriz did not present credible evidence that it actually lost any rental opportunities. We examined this evidence particularly for the period in 2013 and 2014 prior to International Automotriz's receipt of the government payment. The documents that International Automotriz offered to show lost rental opportunities are in Spanish with only an English summary, not a translation of each document (finding 19). Under Board Rule 4(c), only English documents or translations may be considered. Even if these documents could be considered, each document was dated in 2015 and relates to a client inquiry in 2015, as the English summary confirms (*id.*). Thus they do not show lost profitable opportunities in 2013 or 2014. Still other documents offered for support of lost vehicle rent relate instead to opportunities to provide cell phones to customers, not rental vehicles (finding 19).

---

does not contractually bind the government. *Trauma Serv. Group v. United States*, 104 F.3d 1321, 1325 (Fed. Cir. 1997).

The evidence instead shows that International Automotriz could obtain vehicles outside its own fleet when it needed to do so. Sra. Sibrian testified that a client requested 30 rented vehicles in July 2014, and International Automotriz fulfilled that request by obtaining vehicles from other colleagues (finding 20). If International Automotriz could obtain 30 vehicles when needed to meet a client request, it is difficult to understand how the alleged unavailability of three vehicles could cause more than $139,412.12 worth of lost opportunities.

Presented with appellant's actual conduct, we cannot credit appellant's assumptions that the vehicle damage prevented the company from fulfilling opportunities for vehicle rental income from other clients. We conclude that the government's failure to exercise ordinary care did not cause International Automotriz's alleged lost rental income.

Appellant urged in its post-hearing brief that its lost rent calculation should be viewed as a representation of the "rippled blow" of cascading impacts to its business, rather than a calculation of lost rent. Appellant claims that the vehicle damage, coupled with the government payment delay, forced appellant to incur $50,000 in borrowing costs, plus reputational harm, litigation expenses, and emotional harm for its owner.[5] (App. br. at 2)

The evidence does not support these contentions. International Automotriz's financial deterioration began before it entered into the Contract with the government (finding 11). Moreover, if the source of its financial problems had been the lack of vehicles to rent to other clients, the rational choice would have been to rent out the Toyota, use the government payment to repair the other vehicles, and rent them out as well. Alternatively appellant could have sought to borrow money to repair the remaining vehicles sooner to generate revenue. Appellant's borrowings in 2014, which were in excess of $10,000, demonstrated that it had borrowing capacity to secure the $8,123.91 necessary to repair the vehicles (findings 14, 17). International Automotriz did not do any of those things (findings 8, 13, 17).

As a result, appellant has not proved that, but for the vehicle damage, it would have avoided financial problems. *California Federal Bank*, 395 F.3d at 1267 (endorsing "but for" test for causation of damages). Moreover, appellant has offered no evidence to support the figure of $50,000. The amount appears to be pure speculation and therefore these damages are not recoverable. 8 C.J.S. *Bailments* § 148 at 606; *cf. Wells Fargo*

---

[5] International Automotriz argues that its demand is reasonable, because the cost to replace the vehicles would have exceeded $200,000 (app. br. at 1). This argument is unavailing. It relies upon vehicle valuations submitted for the first time after the record closed (app. br. at 1). We will not consider the newly-provided valuations. We note further that appellant did not lose the vehicles but sold them for amounts that appellant declined to disclose (finding 14).

*Bank,* 88 F.3d at 1021.

In contrast, the government payment was reasonable and based on assumptions that were favorable to International Automotriz. The government paid lost rent for the number of days that it estimated repairs would have taken for each vehicle (finding 16). In so doing, the government assumed that each vehicle would be repaired sequentially, rather than all vehicles repaired at the same time. This assumption stretched out the number of days of lost rent paid to 55, rather than as few as 19. We find the government payment adequately compensated appellant.

## CONCLUSION

The Board finds that International Automotriz did not prove its damages with reasonable certainty, and that its claimed amounts were not caused by the government's failure to use ordinary care. The appeal is denied insofar as it seeks amounts in addition to the $12,947.88 already paid.

Dated: 16 November 2015

ELIZABETH W. NEWSOM
Administrative Judge
Armed Services Board
of Contract Appeals

I concur

MARK N. STEMPLER
Administrative Judge
Acting Chairman
Armed Services Board
of Contract Appeals

I concur

RICHARD SHACKLEFORD
Administrative Judge
Vice Chairman
Armed Services Board
of Contract Appeals

10

I certify that the foregoing is a true copy of the Opinion and Decision of the Armed Services Board of Contract Appeals in ASBCA No. 59665, Appeal of International Automotriz, rendered in conformance with the Board's Charter.

Dated:

JEFFREY D. GARDIN
Recorder, Armed Services
Board of Contract Appeals

11