4 U.S. 269 (____)
4 Dall. 269
Mitchell, Plaintiff in Error,
versus
Smith.
Supreme Court of United States.

*271 W. Tilghman, for the plaintiff in error.
Rawle, for the defendant in error.
ERROR from the Court of Common Pleas of Luzerne county; where an action of debt had been brought by Smith, for the use of Cash, against Mitchell, upon a single bill, or sealed note, dated the 11th of March 1796, for 483 dollars and 33 cents, payable in three years with interest. The defendant pleaded payment, with leave to give the special matter in evidence: and thereupon issue was joined. On the evidence, it appeared, that the note was given for 1500 acres of land, lying in the township of Smithfield, in the county of Luzerne, out of the seventeen townships, which Smith conveyed to Mitchell, at the time of the sale; that the land had been granted to Smith by the committee of the Susquehanna company; that Mitchell had been in the actual and peaceable possession of the land from the time of the sale; and that he had a full knowledge of the law of April 1795, against intrusions under the Connecticut title, as well as of the general dispute, relative to lands in Luzerne county. On the trial in April term 1802, the defendant below insisted upon three points: 1st. That the consideration of the contract was illegal; and, therefore, the bill, or note, was void. 2d. That the transaction was against the policy of the law. 3d. That the consideration had failed. RUSH, President, in his charge to the jury, delivered an opinion against the defendant, on all the points; and concluded with stating, that "if the jury are of opinion that the defendant "knew, and was acquainted with, every material circumstance, "relative to the bargain, it is their duty to make him "pay the money, with the interest thereon. But if they are of "opinion, that he was, in any degree imposed upon, or purchased "ignorantly; in that case, they ought to find a verdict in "his favour."[(1)] To this charge, a bill of exceptions was tendered *270 and allowed; and thereupon the present writ of error was instituted.
The argument, for the plaintiff in error, turned upon this single proposition: "That as the transaction, on which the debt "arose, was prohibited by the law of Pennsylvania, the bill, or "note (being made the evidence of the debt) contravened the "policy of the law, and was, in its nature, a nullity: so that no "Court of Pennsylvania would sustain an action upon it; though "the statute did not expressly declare it to be void." 3 State Laws, 703. Dall. edit. Cowp. 39. 729. 734. 3 Burr. 1568. 1 T. Rep. 55. 1 Vez. 276. 3 Burr. 2234. Telv. 197. 2 Lev. 174. 1 P. Wms. 185. 5 T. Rep. 120. Doug. 671. 3 T. Rep. 456. 4 T. Rep. *271 466. 5 T. Rep. 599. Cowp. 341. Carth. 252. Cro. E. 788. Hob. 165. Esp. 88. 2 Wils. 133. 32 H. 8. c. 9. Moore, 564.
For the defendant in error, his right to recover the debt was maintained on various grounds: 1st. Because the bill, or note, is good at common law. 2d. Because the drawer of the note, received a consideration for it. 3d. Because it was given without fraud, or imposition, under a knowledge of all the circumstances. 4th. Because it would be good even as a voluntary bond. 5th. Because it is not rendered void by any statute; the acts of assembly subjecting an intruder to indictment and eviction, but never, in any instance, declaring a contract for the land, or a security for the price, to be unlawful and void. 6th. That it is not against the policy of the law (as in the cases cited upon smuggling) to allow a recovery of the debt. 3 State Laws, 703. Dall. edit. 4 Ibid. 198. 1 Burr. 545. Cro. J. 643. 1 Show. 398. Cowp. 524. 650. 2 Atk. 251. 2 Vez. jun. 422. 1 Wils. 229. 4 Burr. 2069. 3 T. Rep. 418. 2 Burr. 1077. 3 T. Rep. 456. 6 T. Rep. 61. 7 T. Rep. 601. Doug. 670. Bous. & Pull. 3. Esp. 18.
After great consideration, the Judges delivered their opinions at large, seriatim, pronouncing the contract, on which the bill, or note, was given, to be unlawful, immoral, and against the public policy of the law. They, therefore, decided, that no Court of justice in Pennsylvania could lend its aid to effectuate such a contract; and, consequently, reversed the judgment of the Court of Common Pleas.[(2)]
Judgment reversed.
NOTES
[(1)] The following was published, as a copy of Judge RUSH'S charge.

RUSH, President. With respect to the first point, that is, the illegality of the bond, this depends upon a sound construction of the Intrusion Law, and has already been decided by this Court.[*] The act is penal and made the offences described in it indictable. The offences being wholly new and created by the act, the parties can be punished in no other way. The law says not a word with respect to the contract; but points its penalties only against the Persons of the offenders. Laws similar to this have been enacted in England, against forestalling, regrating, and selling pretended titles; all which inflict penalties on the persons of those who shall transgress them; but it has never been supposed, that they affected, or impeached, the validity of the contract between the parties, in the smallest degree. For these reasons, it is the opinion of the court, that the Intrusion law has not destroyed or vitiated the contract between David Smith and Reuben Mitchell.
The 2d reason assigned by the counsel for the defendant to set aside the contract, is, that it is against general or public policy.
[* Avery's Executors v. Jenkins.]
When the legislature pass a law upon a particular subject, it is the duty of the Court to see it carried into execution in the manner described in the law, and in no other. Thus, when the English parliament enacted, that whoever shall buy any goods, wares, &c. on the way to market, &c. shall be liable to fine and imprisonment, the Judges did not think proper to go a step beyond the law; though there cannot be the least doubt, that the crime of forestalling, was repugnant to sound public policy, and against the policy of the law itself. The contract was admitted to be valid and binding between the parties, though they were punishable for their conduct.
It is readily acknowledged, that every such contract and sale of land, with delivery of possession, is contrary to the interests of the commonwealth of Pennsylvania; and so is every forestalling contract, or sale of a pretended title, repugnant to the interests of that country, where the laws forbid such contracts, and inflict penalties on those who enter into them. The law itself supposes the contract to be injurious to the interests of the country, and against the policy of the law which forbids the act to be done. But, unless the law expressly destroys the contract, I do not conceive a Court of justice is authorised to do it, on the ground of its being against the good of the public. It would be an assumption of legislative power.
The 3d and last reason, for setting aside this contract is, that the consideration has failed. When we speak of the consideration of a contract failing, it is understood, that the bargain turns out different from what was expected. The rule is, where the party is deceived, or imposed upon, he is not obliged to pay his money. For example, if A. sell a Susquehanna title to B. who is ignorant of the total defect of such title; there is no doubt B. may avoid the sale, on the ground of want of consideration, and imposition. But that is not the case now before the Court. Here it is admitted that Mitchell knew of the intrusion law, and the circumstances of the dispute relative to titles in this county. Mitchell, therefore, bought with his eyes open, and now comes forward to be relieved from his contract. In such case what is the language of a Court of Chancery? If both parties meant what they did, and were acquainted with the whole circumstances of the bargain, and if neither was deceived, the agreement must stand.
The maxim of law is true, that where two persons engage in an illegal transaction, the condition of the defendant shall be preferred; but as this maxim supposes the contract to be illegal, it cannot apply here.
Upon the whole, gentlemen, if you are of opinion, that the defendant knew and was acquainted with every material circumstance relative to the bargain, it is your duty to make him pay the money, with the interest thereon; but if you are of opinion he was in any degree imposed upon, or purchased ignorantly, in that case you ought to find a verdict in his favour.
The jury retired a few minutes, and returned with a verdict in favour of the plaintiff, for the amount of the sum mentioned in the note, with interest.
[(2)] The same principle has been decided in Maybin, surviving Partner, &c. v. Coulon; and in Duncanson v. M`Lure; both cases of contravening the act of congress, for registering vessels of the United States.