# United States Court of Appeals for the Federal Circuit

---

**PARK PROPERTIES ASSOCIATES, L.P.,**
**VALENTINE PROPERTIES ASSOCIATES, L.P.,**
*Plaintiffs-Cross-Appellants*

**v.**

**UNITED STATES,**
*Defendant-Appellant*

---

2017-2279, 2017-2344

---

Appeals from the United States Court of Federal Claims in No. 1:15-cv-00554-LAS, Senior Judge Loren A. Smith.

---

Decided: February 19, 2019

---

THOMAS A. GENTILE, Wilson Elser Moskowitz Edelman & Dicker LLP, Florham Park, NJ, argued for plaintiffs-cross-appellants.

JOHN JACOB TODOR, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, argued for defendant-appellant. Also represented by KENNETH DINTZER, ROBERT EDWARD KIRSCHMAN, JR., JOSEPH H. HUNT.

---

Before STOLL, MAYER, and SCHALL, *Circuit Judges.*

STOLL, *Circuit Judge.*

The government appeals the United States Court of Federal Claims's denial of its motion to dismiss and grant of summary judgment in favor of landlord-plaintiffs Park Properties Associates, L.P. and Valentine Properties Associates, L.P.[1] Landlord-plaintiffs cross-appeal the trial court's denial of vacancy damages. We reverse the trial court's denial of the government's motion to dismiss. Accordingly, we vacate the trial court's grant of summary judgment regarding liability and damages, and remand for proceedings consistent with this opinion.[2]

## BACKGROUND

This appeal concerns jurisdiction over a contract dispute. The United States Department of Housing and Urban Development ("HUD") administers the project-based Section 8 housing program using Housing Assistance Payments ("HAP") renewal contracts. Park and Valentine own publicly assisted housing in Yonkers, New York. They allege that the government breached the renewal contracts, resulting in money damages. The trial court determined that it had jurisdiction, found the government liable for

---

[1] *Park Props. Assocs., L.P. v. United States*, 128 Fed. Cl. 493 (2016).

[2] Landlord-plaintiffs move to strike portions of the government's reply brief as nonconforming for allegedly raising the new issue of an "implied-in-law" contract. Mot. of Pls.-Cross-Appellants to Strike Appellant's Nonconforming Reply Br. 4, ECF No. 51 (particularly citing Reply and Resp. Br. of Def.-Appellant United States, ECF No. 39 at 7, 14–16, 23–24). Because we do not reach the trial court's reformation of the renewed contracts below, we deny the motion to strike as moot.

breach of contract, and awarded $7.9 million in total damages to Park and Valentine.

We focus on jurisdiction, the threshold issue. The parties agree that the trial court has jurisdiction only if the parties were in privity of contract. The salient facts regarding jurisdiction are as follows. The contracts at issue were executed in a two-tiered system. First, the government, through HUD, contracted with a public housing agency ("PHA") (here, the New York State Housing Trust Fund Corporation ("NYSHTFC")). Second, the PHA contracted with the private owners of rental housing (here, landlord-plaintiffs). Neither contract explicitly named both the government and the landlord-plaintiffs as directly contracting parties, but the trial court held that the renewal contracts created privity between them.

Section 1 of each renewal contract specifically identified the parties. For example, the Park renewal contract specifically identified the two parties as NYSHTFC and Park:

**1    CONTRACT INFORMATION**

. . .

**<u>PARTIES TO RENEWAL CONTRACT</u>**

**Name of Contract Administrator**

New York State Housing Trust Fund Corporation

. . .

**Name of Owner**

Park Properties Associates, LP

J.A. 41–42 (footnotes omitted). Notably, Section 1 did not identify the government or HUD as a party to the contract.

Section 4(a)(1) of each Park and Valentine renewal contract reiterated that the contract was between the Contract Administrator and the Owner of the Project—as identified

in Section 1, discussed above.  However, Section 4(a)(2) further specified that, if HUD was the Contract Administrator, HUD would remain a party to the renewal contract even if HUD assigned the renewal contract to a PHA:

**4    RENEWAL CONTRACT**

**a    Parties**

(1)  The Renewal Contract is a housing assistance payments contract ("HAP Contract") between the Contract Administrator and the Owner of the Project (see section 1).

(2)  If HUD is the Contract Administrator, HUD may assign the Renewal Contract to a public housing agency ("PHA") for the purpose of PHA administration of the Renewal Contract, as Contract Administrator, in accordance with the Renewal Contract (during the term of the annual contributions contract ("ACC") between HUD and the PHA).  Notwithstanding such assignment, HUD shall remain a party to the provisions of the Renewal Contract that specify HUD's role pursuant to the Renewal Contract, including such provisions of section 9 (HUD requirements), section 10 (statutory changes during term) and section 11 (PHA default), of the Renewal Contract.

J.A. 44.  Furthermore, Section 11 of each contract laid out conditions that would apply if the Contract Administrator was a PHA that defaulted, in which case HUD would be able to take action under the terms of the contract:

**11  PHA DEFAULT**

**a**   This section 11 of the Renewal Contract applies if the Contract Administrator is a PHA acting as Contract Administrator pursuant to an annual contributions contract ("ACC") between the PHA and HUD.  This includes a case where HUD

has assigned the Renewal Contract to a PHA Contract Administrator, for the purpose of PHA administration of the Renewal Contract.

**b** If HUD determines that the PHA has committed a material and substantial breach of the PHA's obligation, as Contract Administrator, to make housing assistance payments to the Owner in accordance with the provisions of the Renewal Contract, and that the Owner is not in default of its obligations under the Renewal Contract, HUD shall take any action HUD determines necessary for the continuation of housing assistance payments to the Owner in accordance with the Renewal Contract.

J.A. 47. HUD also signed each renewal contract, even though it was not named as a party in Section 1. For example, the signature page of the June 2009 Park renewal contract includes the signature of an authorized HUD representative, as shown below:

SIGNATURES

Contract administrator (HUD or PHA)

Name of Contract Administrator

New York State Housing Trust Fund Corporation
38-40 State Street, Hampton Plaza, Albany, NY 12207

By: _____
Signature of authorized representative

James Van Loan, State Manager New York, CGI
Name and official title

Date ____6|18|04_____

U.S. Department of Housing and Urban Development

By: _____
Signature of authorized representative

Diane Lima, Director, Project Management, New York Multifamily HUB

Name and official title

Date ____6/22/9_____

RECEIVED
JUN 26 2009
CGI Albany

Owner

Name of Owner   Park Properties Associates LP

By: _____
Signature of authorized representative

JEROME Z. GINSBURG   Pres of GP
Name and title

Date ____6/12/09_____

J.A. 49.

After considering the above, the trial court found that the terms of the contract created privity between the landlord-plaintiffs and HUD:

> The terms of the contract create privity between the owners and HUD. Section 4(a)(2) of the contract provides that HUD is party to provisions of the renewal contract. One of these provisions is

> in [Section] 11, in which HUD agrees to correct any default if the Public Housing Agency ("PHA") breaches the contract, as well as agrees to continue assistance payments to the owners. Furthermore, although the NYSHTFC is listed as the Contract Administrator, HUD is a signatory to this contract.

*Park Props.*, 128 Fed. Cl. at 497 (citations omitted). Next, the trial court found the government liable for breach of contract and awarded rent underpayment damages to Park and Valentine. *Id.* at 498–99. The government appeals those determinations. In calculating damages, the trial court denied Park and Valentine's request for vacancy damages, *see Park Props. Assocs., L.P. v. United States*, 2017 WL 1718751, at *3 (Fed. Cl. May 2, 2017), and Park and Valentine cross-appeal. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(3).

DISCUSSION

I

We review a trial court's determination of its subject matter jurisdiction de novo. *See Abbas v. United States*, 842 F.3d 1371, 1375 (Fed. Cir. 2016); *see also Litecubes, LLC v. N. Light Prods., Inc.*, 523 F.3d 1353, 1360 (Fed. Cir. 2008). Plaintiff bears the burden of establishing jurisdiction by a preponderance of the evidence. *See McNutt v. Gen. Motors Acceptance Corp.*, 298 U.S. 178, 189 (1936). Under the Tucker Act, the Court of Federal Claims has jurisdiction only if there is privity of contract between plaintiffs and the government. *See Cienega Gardens v. United States*, 194 F.3d 1231, 1239 (Fed. Cir. 1998). Whether a contract exists is a mixed question of law and fact. *See Ransom v. United States*, 900 F.2d 242, 244 (Fed. Cir. 1990). We review jurisdictional findings of fact for clear error. *See Banks v. United States*, 314 F.3d 1304, 1308 (Fed. Cir. 2003). "A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm

conviction that a mistake has been committed." *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948).

Where the government contracts indirectly with a plaintiff, our predecessor court and our court have held that there is generally no privity. In *D. R. Smalley*, for example, the United States Court of Claims held that there was no express privity of contract because there was no express contract between the Federal Government and the contractor. *D. R. Smalley & Sons, Inc. v. United States*, 372 F.2d 505, 508 (Ct. Cl. 1967). Furthermore, the court held that there was no implied privity because the acts and omissions of the State of Ohio did not impose liability on the federal government. Instead, the contracts were between the State of Ohio and the contractor. *Id.* Thus, the court concluded, there was no express or implied privity of contract, and therefore the federal government was not liable in contract for the claimed damages. *Id.*

In *Housing Corp.*, the Court of Claims applied the *D. R. Smalley* doctrine to privity issues involving government contracts under the United States Housing Act of 1937.[3] *Hous. Corp. of Am. v. United States*, 468 F.2d 922, 923–24 (Ct. Cl. 1972). There, the court considered a contract of sale between the plaintiff and a local authority. Plaintiff entered into the contract of sale with the local authority for the development, construction, and sale of the project. *Id.* at 923. Though the government was not expressly a party to the contract, it was significantly involved in the project. For example, the government approved the contract between the local authority and plaintiff, approved drawings, plans, and specifications, and made direct demands on the plaintiff for contract changes and agreed to pay for them. *Id.* at 923, 925. Plaintiff sued the government for unpaid costs resulting from those changes. In response, the

---

[3] The predecessor to the United States Housing Act of 1974.

government argued that the court lacked jurisdiction because the government was not in privity of contract and had not waived sovereign immunity.

The court determined that the government was not a party to the contract. Instead, the government obligated itself by separate agreements to local authorities for the funding of approved projects. Ultimately, the court held that this did not create an express or implied contract between plaintiff and the government, nor did it make the local authority the government's agent through HUD. Instead, HUD's actions were performed in the government's capacity as a sovereign. Thus, the Court of Claims determined that the government's actions were sovereign acts that did not subject the government to liability.

The Court of Claims later applied the same logic in *Aetna*. *Aetna Cas. and Sur. v. United States*, 655 F.2d 1047 (Ct. Cl. 1981). There, a construction company and its surety sued the government for alleged losses in completing a federally insured housing project. *Id*. at 1049. The parties executed separate agreements between the construction company, the private corporation created to own the resulting low-income housing, and the government. *Id*. at 1050. There was no written contract directly between the plaintiffs and the government. Nevertheless, HUD was "intimately involved with all details of the project from its inception," including drafting all relevant documents, approving all mortgage advances, and requiring all work to be of a certain quality. *Id*. at 1050, 1052. According to plaintiffs, the private corporation created to own the resulting low-income housing was a creature of HUD. Plaintiffs further argued that HUD provided all financing, drafted all contracts, and conceived, implemented, and supervised the project. The court nonetheless determined that this was not sufficient to establish privity between plaintiffs and the government. The court held that where the United States does not make itself a party to the contracts that implement important national policies, no express or implied

contacts result between the United States and those who perform the work. *Id.* at 1052–53 (first citing *D. R. Smalley*, 372 F.2d at 508; then citing *Hous. Corp. of Am.*, 468 F.2d at 924). Accordingly, the court concluded that there was no privity of contract, express or implied.

Our court followed a similar line of analysis in *Katz*. *Katz v. Cisneros*, 16 F.3d 1204, 1207 (Fed. Cir. 1994). Like this case, *Katz* concerned a Section 8 program under the Housing Act of 1937. HUD administered the program by contracting with local PHAs, which in turn contracted with a private developer. HUD approved of one such contract between Housing Allowance and Hollywood Associates (a private developer). Following an audit, HUD ordered Housing Allowance to reduce contract rents paid to Hollywood Associates, concluding that they were too high. The court acknowledged that, to succeed in its subsequent suit against HUD, Hollywood Associates had to show that the district court had subject matter jurisdiction and that HUD waived its sovereign immunity to be sued. *Id.* We noted that there was no contract between Hollywood Associates and HUD; rather, the contract was between Housing Allowance and Hollywood Associates. We further reasoned that HUD's grant of benefits and subsequent oversight was insufficient to create a contractual obligation between Hollywood Associates and the government. Thus, the court concluded, there was no privity.

In *National Leased Housing Ass'n*, we similarly held that Section 8 landlords who entered into HAP contracts with PHAs instead of directly with HUD were not in privity of contract with the United States. *Nat'l Leased Hous. Ass'n v. United States*, 105 F.3d 1423, 1435–37 (Fed. Cir. 1997) (citing *Katz*, 16 F.3d at 1210). To show privity, we held that a party must establish that: (1) the prime contractor was acting as a purchasing agent for the government; (2) the agency relationship between the prime contractor and the government was established by clear contractual consent; and (3) the contract stated that the

government would be directly liable to the vendors for the purchase price. *Id.* at 1436. After considering the facts and contracts at issue, we held that the third element was not satisfied. The contract had the following provision: "HUD shall assume the [PHA's] rights and obligations under the [ACC] and/or [HAP] Contract . . . ." *Id.* The appellants, in making their argument, omitted the rest of the provision, which allowed HUD to assume rights and obligations only in a particular circumstance: "HUD *may*, if it determines the [PHA] is in default, assume the [PHA's] rights and obligations . . . ." *Id.* We held that this was not the kind of direct, unavoidable contractual liability that establishes privity and thereby waives sovereign immunity.

In *D. R. Smalley*, *Housing Corp.*, *Aetna*, *Katz*, and *National Leased Housing Ass'n*, our court and our predecessor court consistently held that plaintiffs that had not directly contracted with the government for housing projects did not have privity. In each case, the court carefully reviewed the government's liability imposed by the text of the contract and the relationship between the parties, but nonetheless determined that there was no privity of contract.

Based on these cases, we are compelled to conclude that there is likewise no privity here. Section 1 of each contract clearly identifies the parties as the "Contract Administrator" and "Owner" of each project. The contracts name the parties in Section 4a: "The Renewal Contract is a [HAP contract] between the Contract Administrator and the Owner of the Project (see section 1)." J.A. 44 (Park); J.A. 89 (Valentine). Here, every contract identifies the Contract Administrator as the NYSHTFC and the Owners as either Park or Valentine. And, the instructions for listing the "Name of Contract Administrator" appear at footnote 4 of the contract: "Enter the name of the Contract Administrator that executes the Renewal Contract. If HUD is the Contract Administrator, enter [HUD]. If the Contract Administrator is a [PHA], enter the full legal name of the PHA." J.A. 51 n.4. HUD is not listed in that

field, and therefore it is not the Contract Administrator. We also conclude that the Contract Administrator is a PHA: NYSHTFC. In *Katz*, we held on similar facts—where HUD contracted with a PHA who in turn contracted with an Owner with HUD's approval—that the plaintiff did not have privity of contract. *Katz*, 16 F.3d at 1206, 1210. That same conclusion applies here.

## II

The trial court's decision in this case conflicts with our precedent. The trial court and landlord-plaintiffs provide four reasons for rejecting the government's jurisdiction argument. We address each argument in turn.

First, the trial court held and landlord-plaintiffs argue that the statute authorized *only* HUD to execute the renewal contacts. The statute reads:

> The Secretary is authorized to enter into annual contributions contracts with [PHAs] pursuant to which such [PHAs] may enter into contracts to make assistance payments to owners of existing dwelling units in accordance with this section. In areas where no [PHA] has been organized or where the Secretary determines that a [PHA] is unable to implement the provisions of this section, the Secretary is authorized to enter into such contracts and to perform the other functions assigned to a [PHA] by this section.

42 U.S.C. § 1437f(b)(1). Contrary to the trial court and plaintiffs' assertion, the statute does not restrict authority to execute the renewal contracts to HUD. Instead, the statute simply provides that the Secretary is authorized to enter such contracts. It does not limit that authorization to the Secretary or HUD.

Second, the trial court reasoned and landlord-plaintiffs argue that NYSHTFC is a mere contract administrator, not a PHA, because NYSHTFC did not initiate, negotiate, or

administer the renewal contracts. *See Park Props.*, 128 Fed. Cl. at 497; Cross-Appellants' Br. 29 n.7, ECF No. 36. We disagree because the contracts clearly state that NYSHTFC is the PHA and that NYSHTFC and the plaintiffs are the only parties to the contract. We also disagree because there is nothing in the statute that supports the trial court's conclusion that "the PHA *must* initiate, contract, and administer the contract" to avoid privity. *Park Props.*, 128 Fed. Cl. at 497. Instead, the statute allows HUD to provide assistance through annual contributions contracts with PHAs in accordance with the terms of the statute. *See* 42 U.S.C. § 1437f(b)(1). Nor is there any dispute that NYSHTFC fits HUD's definition of PHA. 24 C.F.R. § 5.100 (defining PHA to mean "any State, county, municipality, or other governmental entity or public body, or agency or instrumentality of these entities, that is authorized to engage or assist in the development or operation of low-income housing under the 1937 Act"). We decline to read additional requirements into the statute's plain language.

Third, the trial court and landlord-plaintiffs argue that regulations implementing the Multifamily Assisted Housing Reform and Affordability Act of 1997 ("MAHRA") require that HUD be the party that renews the contract. Specifically, they point to 24 C.F.R. § 402.5(a), which reads in relevant part:

> Contract renewals under section 524(b) or (e) of MAHRA.
>
> (a) Renewal of projects eligible for exception rents at owner's request. *HUD will offer* to renew project-based assistance for a project eligible for exception rents under section 524(b) of MAHRA at rent levels determined under this section . . . but the owner of a project other than a project with assistance under the Section 8 moderate rehabilitation program may request renewal under § 402.4.

*Id.* § 402.5(a) (emphasis added). According to the court and plaintiffs, this regulation requires that HUD be the party that renews the contract, and accordingly requires that there be privity between the government and landlord-plaintiffs in this case. We disagree. The regulations simply indicate that HUD *can* be a party to the renewal contracts. Permission is not the same as a mandate. And, the regulation, taken in context with its citation to 24 C.F.R. § 402.4, relates more clearly to specifying the rental rates that apply to potential contract renewals. *Compare* 24 C.F.R. § 402.5(a) ("HUD will offer to renew . . . at rent levels determined under this section"), *with* 24 C.F.R. § 402.4 ("HUD may renew . . . at initial rents that do not exceed comparable market rents.").

Fourth, landlord-plaintiffs argue that the terms of the contract create privity between the government and the plaintiffs. They argue that Section 11 of the contract states that if the PHA breaches the contract, HUD agrees to correct any default by the PHA and to continue the housing assistance payments. They also cite Section 4(a)(2) of the Contract as stating that HUD should remain a Party to the contract. Finally, they submit that Section 2(c) of the contract required HUD to provide the funds necessary under the contract. We disagree. Section 11 gives HUD tremendous discretion, but it does not obligate HUD. Section 11 is similar to the paragraph that our court addressed in *National Leased Housing Ass'n*, which we discussed above. There, the provision required HUD to assume certain rights and obligations in accordance with a provision that "HUD *may*, if it determines the [PHA] is in default, assume the [PHA's] rights and obligations." *Nat'l Leased Hous. Ass'n*, 105 F.3d at 1436 (alterations in original). Because the condition was predicated on HUD's discretion to assume the PHA's rights and obligations, the court reasoned that HUD's liability, if any, was completely within its discretion. Because this was "not the type of direct, unavoidable contractual liability necessary to trigger a waiver of

sovereign immunity," the court concluded that there was no privity. *Id.* Here, too, the liability of the government, if any, is contingent upon the government's acquiescence through Section 11, which permits HUD to correct any default by the PHA, but only at HUD's discretion. The contractual liability does not rise to the level necessary to trigger a waiver of sovereign immunity. The same logic applies to Sections 4(a)(2) and 2(c) of the contract. Thus, we conclude that the terms of the contract do not create privity between the government and the landlord-plaintiffs.

## CONCLUSION

For the reasons above, we reverse the trial court's determination that it had subject matter jurisdiction and vacate the trial court's decision regarding liability and damages. We have considered the parties' remaining arguments and find them unpersuasive. Accordingly, we remand for entry of judgment consistent with this opinion.

### REVERSED-IN-PART, VACATED-IN-PART, AND REMANDED

## COSTS

No costs.