ARMED SERVICES BOARD OF CONTRACT APPEALS

| | |
|---|---|
| Appeals of - | ) |
| | ) |
| Erik Robinson d/b/a The Artwork Factory | )  ASBCA Nos. 63727, 63809 |
| | ) |
| Under Contract No. 7235-0005-23 *et al.* | ) |

APPEARANCE FOR THE APPELLANT:          Mr. Erik D. Robinson
                                                                              Managing Director


APPEARANCES FOR THE GOVERNMENT:    Dana J. Chase, Esq.
                                                                               Army Chief Trial Attorney
                                                                              MAJ Chris Walton
                                                                               Trial Attorney


OPINION BY ADMINISTRATIVE JUDGE MELNICK PARTIALLY GRANTING
AND PARTIALLY DENYING THE GOVERNMENT'S MOTION TO DISMISS
FOR LACK OF JURISDICTION

Erik Robinson d/b/a The Artwork Factory (TAF), has filed these appeals pro se, alleging that TAF was party to an implied-in-fact contract with the Army and Air Force Exchange Service (government or exchange) entitling TAF to certain concessions from the exchange, with the potential for wider distribution in the exchange's stores and mall storefronts. TAF alleges the government breached the contract. It seeks damages and specific performance. The government moves to dismiss the appeals for lack of jurisdiction on the ground that the record does not support the allegations of an implied-in-fact contract and the Board lacks jurisdiction to grant specific performance. For the reasons stated below, we grant the government's request to dismiss the specific performance claims and deny its request to dismiss the breach claim.

STATEMENT OF FACTS (SOF) FOR PURPOSES OF THE MOTION

1. TAF's pro se complaint is voluminous and difficult to follow, but we discern the following from it. According to TAF, it contacted the exchange to be listed as a supplier (compl. ¶ 1). It provided product samples to the government that were initially well received, but less so after it disclosed the racial make-up of the company (compl. ¶ 2). TAF was then contacted by an unknown government vendor claiming to have received TAF's confidential product information from the government (compl. ¶ 4). TAF alleges that the vendor said it had been tasked by the government to assist TAF with navigating the vendor approval process (compl. ¶ 5). Later, the government confirmed with TAF that it had spoken to the vendor, stating it would be in the mutual interest of both the government and TAF for it to work with the vendor, which was the only way TAF could

proceed (compl. ¶¶ 6-8). TAF says this communication tricked it into providing more sensitive trade information, business secrets, pricing information, manufacturing insights, and additional samples to the government (compl. ¶ 8).

2. After supplying the information, TAF says the exchange officially selected its products for listing and sale at a facility in Dallas, Texas. However, the government ultimately refused to send TAF purchase orders. (Compl. ¶ 9) In 2016, TAF discovered that the government had listed its products for purchase from the third-party vendor it had dealt with. TAF informed the government that it would hold the government liable for violating a non-compete/non-disclosure agreement. Nevertheless, the government awarded the third-party vendor with contracts to supply 29 locations with the products TAF developed. (Compl. ¶ 10) Faced with potential litigation, in 2017, the government proposed an alternative scheme where it would grant TAF concessions in five locations in Germany that would set the stage for wider distribution in the exchange's main stores and mall storefronts, through an implied-in-fact agreement (compl. ¶ 12). However, a condition of the agreement was that TAF suspend seeking damages for unfair trade practices (compl. ¶ 13).

3. After the parties established their agreement, the government allowed TAF to hold concession events in Germany, which achieved high sales. However, the government did not permit the wider distribution allegedly contemplated. (Compl. ¶¶ 13-16) It did provide TAF with a vacant shop at the Ramstein, Germany exchange. But after only four months, and despite "unmatched sales," TAF was forced to vacate that space for another. (Compl. ¶ 17) Later, the government required TAF to leave that space as well without providing a justification (compl. ¶¶ 17-18). In 2023, TAF resumed its efforts to pursue its prior unfair trade practices complaint (compl. ¶ 19). Although there is much additional discussion in TAF's complaint, it essentially alleges that the government's treatment of it breached the implied-in-fact contract. TAF seeks $17.9 million in damages (compl. at 31). It also seeks the Board to order various remedial performance from the government (compl. at 31-32).

DECISION

The government requests dismissal of the appeals for lack of jurisdiction. It claims the record does not support an implied-in-fact contract. Also, it contends we do not possess jurisdiction to order the remedial actions sought by TAF. We can quickly address and express our agreement with the government about the peripheral remedial orders sought by TAF. Those requests seek specific performance that we indisputably lack jurisdiction to entertain. *E.g.*, *SBA Contracting, LLC*, ASBCA No. 63320, 23-1 BCA ¶ 38,443 at 186,849.

We reject the government's contention that we lack jurisdiction over TAF's core claim for breach of an implied-in-fact contract. It is solidly established that a

party "'need only *allege*'—that is, it need not prove—'the existence of a contract' to which it is a party 'to establish the Board's jurisdiction under the [Contract Disputes Act (CDA)] 'relative to' an . . . implied contract with an executive agency.'" *Avue Techs. Corp. v. Sec'y of Health and Human Servs.*, 96 F.4th 1340, 1344 (Fed. Cir. 2024) (quoting *Engage Learning, Inc. v. Salazar*, 660 F.3d 1346, 1353 (Fed. Cir, 2011) (emphasis added in cited authority's quotation)). The court of appeals has unambiguously instructed that "'the determination of whether or not a contract in fact exists is *not* jurisdictional; it is a decision on the merits.'" *Id.* (quoting *Engage* at 1355 (emphasis added in cited authority's quotation)). A party "need only *allege*, non-frivolously, that it has a contract (express or implied) with the federal government." *Id.* at 1345 (emphasis in original). Indeed, "[t]he obligation to actually *prove* the existence of such a contract does not arise until the case proceeds to the merits." *Id.* (emphasis in original). Though "the same question may resolve both the merits and a jurisdictional issue," that "overlap . . . does not make it any less important to distinguish between jurisdiction, which need only be alleged (to survive a motion to dismiss), and the merits, which must be proven." *Id.* n.4. The court of appeals has added that the party only "must allege, in substance, that there was a 'mutual intent to contract including an offer, an acceptance, and consideration' and that 'the Government representative who entered or ratified the agreement had actual authority to bind the United States.'" *Id.* n.3 (quoting *Trauma Serv. Grp. v. United States*, 104 F.3d 1321, 1325 (Fed. Cir. 1997)). These are also the requirements for an implied-in-fact contract. *Lewis v. United States*, 70 F.3d 597, 600 (Fed. Cir. 1995) (quoting *City of El Centro v. United States*, 922 F.2d 816, 820 (Fed. Cir. 1990)).

TAF has alleged all the necessary elements of an implied-in-fact contract. It contends that the government offered to grant it concessions in five locations in Germany, with the potential for wider distribution in the exchange's main stores and mall storefronts, in return for which TAF would suspend seeking damages for unfair trade practices, which TAF indicates it adopted (SOF ¶¶ 2-3). TAF alleges the parties proceeded performing, with the government initially providing concession opportunities and TAF foregoing its unfair trade practices complaint (SOF ¶ 3). These allegations facially reflect a mutual intent to contract. Although we have not specifically identified in the complaint a suggestion that the government representative was authorized to contract with TAF, TAF includes that allegation in its opposition to the government's motion to dismiss (app. opp'n at 9). TAF's assertion of that fact in its brief is sufficient given the leeway administratively afforded to pro se litigants. *See GLJ, Inc.*, ASBCA No. 62964, 22-1 BCA ¶ 38,121 at 185,184.

Undaunted by the well-established legal principles excluding a contract's validity from our jurisdictional inquiry into TAF's breach of contract action, the government plows forward, insisting that we consider evidence allegedly indicating the implied-in-fact contract was not formed. It seeks us to weigh evidence beyond the pleadings that supposedly demonstrates there was no offer by an authorized

3

government representative, mutuality of intent, or meeting of the minds. It also contends that other express agreements between TAF and the government preclude the existence of an implied-in-fact contract purportedly regarding the same subject matter.[1] The government's hook for advancing these merits-based contentions is the court of appeals' jurisdictional condition that the complaint's allegation must be "non-frivolously" expressed. *Avue*, 96 F.4th at 1344-45. The government suggests that if it presents evidence that defeats the validity of the allegations then they are frivolous.

The government's argument would devour the principle that "whether or not a contract in fact exists is *not* jurisdictional" and "[t]he obligation to actually *prove* the existence of . . . a contract does not arise until the case proceeds to the merits." *Id.* at 1344-45. Under the government's formulation, it can evade the contours of our simple allegation-based test for determining jurisdiction over a contract claim by demanding that we dive into a review of the pertinent evidence related to the allegations. If we find the evidence inadequate to support the allegations, we must then find them frivolous and dismiss for lack of jurisdiction. The law suggests the contrary. *See Lewis*, 70 F.3d at 603 (quoting *Hart v. B.F. Keith Vaudeville Exch.*, 262

---

[1] The government's reply brief cites *Trinity Source Logistics LLC*, ASBCA No. 62435, 22-1 BCA ¶ 38,185 at 185,450-52, as support for its contention that the existence of an express contract on the same subject matter is a jurisdictional bar to our entertaining the implied-in-fact contract claim (gov't resp. at 7). The initial issue in that appeal was whether the appellant was in privity of contract with the government respecting an existing express contract. *Id.* at 185,448-50. That is clearly a jurisdictional question. *See Park Props. Assocs., L.P. v. United States*, 916 F.3d 998, 1002 (Fed. Cir. 2019). In response to the government's motion to dismiss, the appellant secondarily suggested it had a separate, implied-in-fact contract with the government. As a matter of law, "an implied-in-fact contract cannot exist if an express contract already covers the same subject matter." *Trauma Serv. Grp.*, 104 F.3d at 1326. In *Trinity*, the Board declined to exercise jurisdiction over the implied-in-fact contract claim after comparing it to the terms of the express contract. 22-1 BCA ¶ 38,185 at 185,450-51. That result is appropriate given that there is no indication that the appellant's complaint contained the required allegations of an implied-in-fact contract to find jurisdiction. However, contrary to the government's suggestion here, the court of appeals has analyzed whether an alleged implied contract is unrelated to an express contract as a merits question, not as a component of jurisdiction. *See Bank of Guam v. United States*, 578 F.3d 1318, 1325-29 (Fed. Cir. 2009) (addressing whether the alleged implied-in-fact contract is unrelated to an express one in the context of a motion to dismiss for failure to state a claim); *Trauma Serv. Grp.*, 104 F.3d at 132-27 (same); *see also Schism v. United States*, 316 F.3d 1259, 1278 (Fed. Cir. 2002) (en banc) (reviewing summary judgment on the merits).

4

U.S. 271, 273 (1923) (observing that "if the bill or declaration makes a claim that if well founded is within the jurisdiction of the Court it is within that jurisdiction whether well founded or not"). The court of appeals has also approvingly cited the Court of Claims' holding that "claims of. . . an implied-in-fact contract are within the court's jurisdiction, even if the claims are nonmeritorious"). *Id.* (citing *Ralston Steel Corp. v. United States*, 340 F.2d 663, 666-69 (Ct. Cl. 1965)). While recognizing that frivolous claims are subject to dismissal for lack of jurisdiction, the court of appeals has also noted that the Supreme Court's references to that doctrine have been unenthusiastic. *Id.* Having so observed, the court of appeals has declared that the Supreme Court's rule is that "jurisdictional dismissals for frivolousness must be 'confine[d]' to cases 'that are very plain.'" *Id.* at 603-04 (quoting *Hart*, 262 U.S. at 274). Accordingly, "[a] well-pleaded allegation in the complaint is sufficient to overcome challenges to jurisdiction." *Trauma Serv. Grp.*, 104 F.3d at 1325 (citing *Spruill v. Merit Sys. Prot. Bd.*, 978 F.2d 679, 686 (Fed. Cir. 1992)). An allegation that an implied-in-fact contract underlies the claim suffices to confer subject matter jurisdiction. *Id.*

TAF's allegations facially describe an implied-in-fact contract with the government. They are not plainly frivolous. Accordingly, its "allegations of the existence of a contract suffice to take the claim . . . into the world of claims within our CDA jurisdiction." *Avue*, 96 F.4th at 1345. Whether a review of the evidence ultimately reveals them to be unfounded on the merits is irrelevant to that determination.

CONCLUSION

The government's motion that we dismiss for lack of jurisdiction TAF's request for remedial orders in the nature of specific performance is granted. The government's motion to dismiss TAF's breach of contract claim for lack of jurisdiction is denied.

Dated: July 15, 2024

MARK A. MELNICK
Administrative Judge
Armed Services Board
of Contract Appeals

(Signatures continued)

I concur                                    I concur


_____            _____
OWEN C. WILSON                              MICHAEL N. O'CONNELL
Administrative Judge                        Administrative Judge
Acting Chairman                             Vice Chairman
Armed Services Board                        Armed Services Board
of Contract Appeals                         of Contract Appeals



        I certify that the foregoing is a true copy of the Opinion and Decision of the
Armed Services Board of Contract Appeals in ASBCA Nos. 63727, 63809, Appeals of
Erik Robinson d/b/a The Artwork Factory, rendered in conformance with the Board's
Charter.

        Dated:  July 16, 2024


                                            _____
                                            PAULLA K. GATES-LEWIS
                                            Recorder, Armed Services
                                            Board of Contract Appeals